**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4184
_____

HEATHCLIFFE JOHN BRADLEY,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Administrative Order of
Removal of the Department of Homeland Security
Ordering Removal pursuant to 8 U.S.C. § 1187
(A87-074-865)
_____

Argued March 11, 2010
_____

Before: AMBRO, SMITH and ALDISERT, Circuit Judges
(Filed:  April 22, 2010)

Haroutyun Asatrian, Esq. (Argued)
Strasser Asatrian, LLC
744 Broad Street, 16th Floor
Newark, NJ 07102

      Counsel for Petitioner

Michael F. Hertz
Acting Assistant Attorney General
Civil Division

Carl H. McIntyre, Jr.
Assistant Director
Office of Immigration Litigation

Gary J. Newkirk, Esq. (Argued)
Stephen F. Day, Esq.
Justin R. Markel, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

      Counsel for Respondent

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Petitioner Heathcliffe John Bradley, a citizen and national of New Zealand, seeks review of a final removal order of the Department of Homeland Security, Immigration and Customs Enforcement ("the Department"). Bradley contends that the Department's removal order is void under Woodby v. INS, 385 U.S. 276, 286 (1966), because the record lacks "clear, unequivocal, and convincing evidence" that he waived his right to contest his removal under the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187. Bradley additionally contends that he did not validly waive his right to contest his removal under the VWP because his waiver was not "knowing and voluntary." Finally, Bradley contends that, notwithstanding any VWP waiver, he may renew his application for a marriage-based adjustment of status before an immigration judge. See 8 U.S.C. § 1255(c)(4). For the reasons that follow, we will deny his petition.[1]

---

[1] We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), which permits us to review final orders of removal. Although some courts have suggested that 8 U.S.C. § 1187(b)(2) narrows our jurisdiction to review removal orders involving VWP entrants, see, e.g., Lacey v. Gonzales, 499 F.3d 514, 519 (6th Cir. 2007), we view § 1187(b)(2) as a substantive, rather than jurisdictional, bar to a VWP entrant's ability to obtain relief from removal. In particular, § 1187(b)(2) does not appear to abrogate 8 U.S.C. § 1252(a)(2)(D), which provides that "[n]othing . . . in any other provision of this Act (other than this

I.

Bradley arrived in the United States on August 28, 1996 without a valid non-immigrant visa, but was admitted

---

section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." We are further persuaded that § 1187(b)(2) is not jurisdiction-stripping because it does not clearly and explicitly deprive federal courts of jurisdiction. See Calcano-Martinez v. INS, 533 U.S. 348, 351-352 (2001) (concluding that "Congress has not spoken with sufficient clarity to strip the district courts of jurisdiction to hear habeas petitions raising" claims not reviewable by petitions for direct review). Compare 8 U.S.C. § 1187(b)(2) (providing that a VWP entrant must "waive any right . . . to contest . . . any action for removal"), with, e.g., 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review . . . ."), 8 U.S.C. § 1252(a)(2)(A),(B) (same), and 8 U.S.C. § 1252(a)(5) ("For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review . . . and review pursuant to any other provision of law (statutory or nonstatutory)."). In view of the "strong presumption in favor of judicial review of administrative action," INS v. St. Cyr, 533 U.S. 289, 298 (2001), we do not believe that § 1187(b)(2) affects our jurisdiction to consider Bradley's claims. As we will explain, however, § 1187(b)(2) has a significant effect on Bradley's ability to pursue substantive relief from removal.

under the VWP. Bradley represents that he was intoxicated when he arrived, and he claims to have little recollection of his admission. Nevertheless, Bradley's declaration establishes that, after his arrival, he signed a form, presented that form to a customs officer, and was admitted into the United States. According to Bradley,

> [u]pon my arrival at John F. Kennedy International Airport in New York, I was given a form to complete, which I vaguely recall completing or even signing for that matter. . . . I handed the form to the Custom's agent, who waived me through after taking a part of my form, without any questions.

(Bradley Decl. ¶¶ 18, 20 (errors in original).) According to his Form I-94W Departure Record, Bradley was authorized to remain in the United States for the 90-day period ending November 27, 1996. (App.[2] 8.) It is undisputed that Bradley remained in the United States beyond his authorized stay, and that he remains here still.

On July 29, 2006, Bradley married Cheryl Losee, a United States citizen. In December 2007 and with the assistance of an attorney, Bradley and Losee applied to United

---

[2]"App." refers to the petitioner's appendix, while "Resp't App." refers to the respondent's appendix.

States Citizenship and Immigration Services to adjust Bradley's status to that of a lawful permanent resident. In conjunction with that application, Bradley's wife filed an I-130 immediate-relative visa petition, a prerequisite to obtaining a marriage-based adjustment of status. That petition was denied pursuant to 8 C.F.R. § 103.2(b)(13) when Bradley and Losee failed to appear for a scheduled interview.

On October 8, 2008, Bradley was arrested and ordered removed, pursuant to 8 U.S.C. § 1187(b). On October 14, 2008, Bradley filed a Petition for Review in this Court and moved for a stay of removal. On November 10, 2008, we stayed Bradley's removal order, and on November 14, 2008, Bradley was released from incarceration, pending our review.

II.

Before we address Bradley's contentions, we first review the purpose and role of the VWP within our nation's body of immigration law.

Congress established the VWP "'to facilitate international travel and promote the more effective use of the resources of affected government agencies while not posing a threat to the welfare, health, safety, and security of the United States.'" Nose v. Att'y Gen., 993 F.2d 75, 77 n.2 (5th Cir. 1993) (quoting 53 Fed. Reg. 24,898 (1988)). Under the VWP, a qualifying visitor may enter the United States without

obtaining a visa, so long as a variety of statutory and regulatory requirements are met. Among other things, a visitor seeking admission under the VWP must execute certain immigration forms, present a passport from a qualifying country, and possess a round-trip ticket. 8 U.S.C. § 1187(a). Once admitted under the VWP, a visitor may remain in the United States for 90 days. 8 U.S.C. § 1187(a)(1).

Although the VWP affords visitor aliens with great flexibility and convenience, those benefits come at a cost. Most significantly, a VWP visitor must waive his or her right to contest the government's admissibility determinations and removal actions, except that the alien may contest removal actions on the basis of asylum.[3] 8 U.S.C. § 1187(a)-(b).

---

[3]The VWP's waiver provision states:

An alien may not be provided a waiver under the program unless the alien has waived any right–

(1) to review or appeal under this Act of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or

(2) to contest, other than on the basis of an application for asylum, any action for removal against the alien.

7

Accordingly, a VWP applicant must, prior to admission, present U.S. officers with a "completed, signed Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form," 8 C.F.R. § 217.2(b)(1), expressly waiving, inter alia, any "right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." 8 U.S.C. § 1187(b)(2). This requirement is ironclad. Indeed, a VWP applicant "may not be provided a waiver under the program unless" the alien has signed a VWP waiver, id., and an applicant who does not sign will be refused admission and removed, see 8 C.F.R. § 217.4(a)(1).

For a VWP entrant, the effects of this no-contest provision are severe. A VWP entrant waives the right to assert any non-asylum objection to his removal. 8 U.S.C. § 1187(b)(2). Additionally, unlike the ordinary removal case, a VWP entrant's removal "shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability." 8 C.F.R. § 217.4(b). But as the Court of Appeals for the Ninth Circuit has recognized, given the ease and convenience with which a VWP visitor may enter the United States, the VWP's "linchpin . . . is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal

_____

8 U.S.C. § 1187(b).

8

if he overstays." Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005). With these precepts in mind, we turn to Bradley's challenge to his VWP waiver.

III.

We first address Bradley's contention that the Department's removal order is invalid under Woodby v. INS, 385 U.S. at 286, because it was entered without "clear, unequivocal, and convincing evidence" that he waived his due process right to contest his removal. In particular, Bradley contends that because his removal order referred to his VWP waiver, that waiver is a "ground for deportation," subject to proof by clear, unequivocal and convincing evidence under Woodby. He contends that because the Department failed to produce his signed I-94W form, it has not met its burden of proof, rendering his removal order invalid. We disagree.

Although we doubt Bradley's assumption that the Department must prove his waiver by "clear, unequivocal, and convincing evidence," we hold that the Department has easily met that burden. Bradley admits that he entered the United States under the VWP, and although his declaration is vague, he concedes that he signed a form, presented that form to a customs officer, and was admitted into the United States. (See Bradley Decl. ¶¶ 18, 20.) Consistent with that account, the record contains the top portion of a Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form, filled

9

out in handwriting "Bradley, Heathcliffe," date of birth "07 10 72," and stamped with Bradley's admission date of "Nov 27 1996." (App. 8.) Bradley's admissions, together with the documentary evidence, constitute powerful evidence that Bradley signed a Form I-94W, including a waiver of due process rights, before he was admitted to the United States.

This evidence becomes nearly irrefutable in view of the regulations and procedures governing admission under the VWP. Under the regulations, each VWP applicant must present a "completed, signed Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form," 8 C.F.R. § 217.2(b)(1), which contains the VWP waiver (Resp't App. 1). During the admission process "[t]he departure record at the bottom of the form is retained by the alien, while the immigration official admitting the alien keeps the top portion, including the signed waiver." (Resp't Br. 14 n.8.) Significantly, "an alien may not be provided a waiver under the program unless the alien has waived any right . . . to contest . . . any action for removal," 8 U.S.C. § 1187(b)(2), and any alien who does not sign the VWP waiver will be refused admission, see 8 C.F.R. § 217.4(a)(1). Because "agency action . . . is entitled to a presumption of regularity," McLeod v. INS, 802 F.2d 89, 95 (3d Cir. 1986), we presume that the Department admitted Bradley under the VWP only after collecting the top portion of his completed I-94W form, including his signed VWP waiver. Although this presumption is rebuttable, id., Bradley has adduced no evidence that the

10

Department admitted him in violation of its own regulations, and in fact, his declaration is entirely consistent with a routine admission under the VWP. We conclude, therefore, that the evidence is more than sufficient to prove Bradley signed a VWP waiver, even assuming that waiver must be proven by "clear, unequivocal, and convincing evidence." As we suggested at oral argument, this contention is underwhelming.

IV.

Bradley next contends that his VWP waiver is invalid because it was not "knowing and voluntary," and he urges us to adopt the "knowing and voluntary" requirement embraced by the Courts of Appeals for the Fifth and Seventh Circuits. See Bayo v. Napolitano, 593 F.3d 495, 505 (7th Cir. 2010) (en banc); Nose v. Att'y Gen., 993 F.2d 75, 79 (5th Cir. 1993). Tracking the reasoning of these decisions, Bradley argues that, as with other waivers of constitutional rights, a VWP waiver of due process rights is not constitutionally enforceable unless it is knowing and voluntary. Bradley contends that his specific waiver was not knowing and voluntary because he was intoxicated when he signed it. At the very least, Bradley contends, he is entitled to adjudicate the constitutional validity of his waiver before an immigration judge. We cannot agree.

In all respects, Bradley's claim amounts to a challenge of his removal order under the Due Process Clause of the

11

Fifth Amendment, and consequently, he cannot prevail without "an initial showing of substantial prejudice." Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (citation and quotation marks omitted).[4] Thus, even assuming without deciding that Bradley's VWP waiver must be "knowing and voluntary," Bradley cannot invalidate his removal order unless he can demonstrate he was "substantially prejudiced" by his allegedly unknowing waiver. He cannot.

Bradley's prejudice argument is soundly defeated by the cogent reasoning of the en banc Court of Appeals for the Seventh Circuit in Bayo v. Napolitano, 593 F.3d 495 (7th Cir. 2010) (en banc), a case factually on all fours with this one. There the court reconsidered a panel decision granting petitioner Bayo's petition for review and ordering the Department to conduct a hearing to determine whether his VWP waiver was knowing and voluntary. Id. at 507. Although the en banc court agreed with the panel's conclusion that a VWP waiver must be knowing and voluntary, it rejected Bayo's due process claim because he could not show prejudice. As the court explained,

> [h]ad he known what the waiver said, Bayo
> would have had two options, either of which

---

[4] See also Khouzam v. Att'y Gen., 549 F.3d 235, 258 (3d Cir. 2008); Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003) (stating the rule in terms of "prejudice").

12

would have led to summary removal. If he had signed the waiver anyway, knowing full well what it said, he would be in the same situation as he is now. If he had refused to sign, he would have been removed summarily at the border because he did not have a proper visa. Perhaps there is a slight chance that after removal, Bayo could have obtained a visa to come to the United States, and then he might have settled in Indiana, met Tatiana Sia, and married her, allowing him to adjust his status based on marriage at that time. As Bayo admits in his brief though, "[i]t is difficult to compare what might have been with what is." This is true, and it is the reason why we find the explanation of how Bayo might have been harmed too speculative to support a showing of prejudice.

Id. at 506. Similarly, Bradley cannot show he has been prejudiced by an unknowing or involuntary waiver because any harm would be too speculative. The consequence he now faces – summary removal – is the same consequence he would have faced had he known of the waiver and refused to sign. He has failed to demonstrate how his knowledge of the waiver realistically could have changed this outcome.

Resisting this conclusion, Bradley urges us to focus our prejudice inquiry not on the time of entry, but on the

13

summary removal resulting from the Department's enforcement of his allegedly unknowing waiver. He contends that his unknowing waiver is prejudicial because it deprives him of his right to contest his removal on the basis of his petition for adjustment of status. This argument fails as well.

Bradley's VWP waiver was an express condition precedent to his 1996 entry to the United States, and he would not have been admitted without it. The prejudice of which he complains – summary removal without a hearing – is a direct consequence of the VWP's congressional design and implementing regulations, and not Bradley's alleged failure to comprehend the terms of his VWP visitor status. See 8 C.F.R. § 217.4(b) (providing that removal of a VWP entrant "shall be effected without referral of the alien to an immigration judge for a determination of deportability"). To prevail on his due process claim, Bradley must demonstrate substantial prejudice resulting from the due process violation he has alleged – his unknowing waiver of constitutional rights. Accordingly, Bradley must prove that, but for his ignorance of the VWP waiver, he could otherwise contest his removal on the basis of his petition for adjustment of status. This, he cannot do. Had Bradley known the contents of the waiver and refused to sign, he would be in the same position as he is now – subject to summary removal without a hearing – and he would not now be eligible to adjust his status on the basis of his marriage to Cheryl Losee. As in Bayo, "the explanation of how [Bradley] might have been harmed [is] too speculative to support a

14

showing of prejudice." Bayo, 593 F.3d at 506.

Likewise, we reject Bradley's contention that, under Khouzam v. Attorney General, 549 F.3d 235, 258 (3d Cir. 2008), we should presume substantial prejudice because Bradley received no process at all. Our Court held in Khouzam that a non-VWP petitioner was "inherently" and "substantially prejudiced" by a "complete absence of any process," when the government, without notice or a hearing, terminated the petitioner's deferral of removal under the Convention Against Torture. Id. at 239-240, 258. Distinct from Bradley, however, the petitioner in Khouzam did not waive his due process rights, and no statute conditioned his admission to the United States on an express waiver of these rights. See id. at 235-260. Although a complete denial of process may be inherently prejudicial in most cases, we find no inherent prejudice in the enforcement of an express due process waiver against an alien who has already received the benefit of that waiver. Consequently, in the VWP context, we will require the same showing of "substantial prejudice" required for other due process challenges to orders of removal. See Khan, 448 F.3d at 236. Because Bradley cannot show prejudice, his due process claim does not carry.

V.

Bradley's final argument is that, even if his waiver is valid and enforceable, he is nevertheless entitled to pursue a

15

marriage-based adjustment of status under 8 U.S.C. § 1255(c)(4).[5] He contends that, because 8 U.S.C. § 1255(c)(4) permits VWP entrants to adjust their status on the basis of an "immediate relative" petition,[6] a VWP entrant pursuing such an adjustment is "assimilated to the status of any other alien who has applied for adjustment of status . . . and is not subject to the VWP[] no contest-clause." (Pet'r Br. 33 (citing Freeman v. Gonzales, 444 F.3d 1031, 1037 (9th Cir. 2006).) Any other interpretation, he contends, would be illogical and would undermine congressional intent to make the adjustment of status remedy available to VWP entrants. Again, he is wrong.

---

[5]The "adjustment of status" remedy permits the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust an alien's status to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

[6]More precisely, 8 U.S.C. § 1255(c)(4) generally makes VWP entrants ineligible for the "adjustment of status" remedy, but carves out an exception for VWP entrants seeking to adjust their status on the basis of an immediate-relative petition. The term "immediate relative" includes the spouse of a U.S. citizen. See 8 U.S.C. § 1151(b)(2)(A)(I).

16

Bradley's position has already been rejected by six of our sister Courts of Appeals, and we now join them in doing the same.[7] As the Court of Appeals for the Seventh Circuit explained in <u>Bayo</u>,

> [a]t first glance, it appears that there is a conflict between the adjustment-of-status statute, 8 U.S.C. § 1255(c)(4), and the VWP statute, 8 U.S.C. § 1187(b)(2). Upon closer examination, however, we believe that they can be reconciled. During the time when a nonimmigrant visitor is within the VWP's 90-day window, she may submit an adjustment-of-status application based on an immediate relative. An application submitted at that time would not represent a challenge to removal. After the visitor overstays her 90-day visit, however, the effect of the VWP waiver kicks in, preventing any objection to removal (except for asylum), including one based on adjustment of status.

---

[7]See Bayo v. Napolitano, 593 F.3d 495, 507 (7th Cir. 2010) (en banc); McCarthy v. Mukasey, 555 F.3d 459, 462 (5th Cir. 2009); Momeni v. Chertoff, 521 F.3d 1094, 1097 (9th Cir. 2008) (narrowing Freeman v. Gonzales, 444 F.3d 1031 (9th Cir. 2006)); Zine v. Mukasey, 517 F.3d 535, 543 (8th Cir. 2008); Lacey v. Gonzales, 499 F.3d 514, 519 (6th Cir. 2007); Schmitt v. Maurer, 451 F.3d 1092, 1097 (10th Cir. 2006).

Bayo, 593 F.3d at 507. We agree and hold that, although Bradley was once statutorily eligible under 8 U.S.C. § 1255(c)(4) for the adjustment he now seeks, he may not, after the expiration of his 90-day stay, adjust his status as a defense to removal. Bradley's VWP waiver squarely forecloses him from contesting his removal on this basis.

Contrary to Bradley's contention, the decision of the Ninth Circuit Court of Appeals in Freeman v. Gonzales, 444 F.3d 1031 (9th Cir. 2006), does not compel another result. Although that case ruled the VWP's no-contest clause inapplicable when "a VWP visitor properly files an adjustment of status application," id. at 1035, the court subsequently narrowed that decision to cover only VWP entrants who petition to adjust their status during their lawful 90-day stay, see Momeni v. Chertoff, 521 F.3d 1094, 1097 (9th Cir. 2008). Thus, after Momeni, a VWP entrant in the Ninth Circuit may contest her removal on the basis of an adjustment-of-status petition filed during her lawful 90-day stay, but as in the other Courts of Appeals, not on the basis of a petition filed after that period. See Lacey, 499 F.3d at 519 n.6 (emphasizing that Freeman does not apply to adjustment of status petitions filed by VWP overstays). Thus, even if we adopted Freeman, that decision would be unavailing to Bradley, who petitioned for an adjustment of status years beyond the expiration of his authorized stay. Consequently, we conclude that Bradley's VWP waiver forecloses him from

18

contesting his removal via a petition for adjustment of status.[8]

## VI.

For the foregoing reasons, we will deny Bradley's petition for review.

---

[8]At oral argument and in a supplemental letter to this Court under Rule 28(j) of the Federal Rules of Appellate Procedure, Bradley raised the argument that certain regulations of the Department of State (namely, the so-called "30/60 day rule" found at 9 <u>Foreign Affairs Manual</u> 40.63 n.4.7-1 to 4.7-4) render § 1255(c)(4)'s adjustment of status provision a nullity for VWP entrants. This argument did not appear in Bradley's opening brief nor in his reply brief, and we deem it waived. <u>See</u> <u>United States v. Pelullo</u>, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); <u>Lattab v. Ashcroft</u>, 384 F.3d 8, 17 (1st Cir. 2004) (noting "[t]he usual rule, . . . that new theories cannot be raised in a post-argument Rule 28(j) filing").