IMG-220                                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3125
_____

MARGARITA MICHULENA

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A79 312 178)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 26, 2010

Before:  AMBRO, CHAGARES AND ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed : May 27, 2010)
_____

OPINION
_____

PER CURIAM

   Margarita Michulena, a citizen of Latvia, was admitted to the United States on

October 22, 1998, as a non-immigrant student.  She overstayed her admission period and

was charged with removability pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. Michulena conceded removability but applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), claiming that she was persecuted based on her sexual orientation as a lesbian.

Michulena claimed that she married her first husband in 1990, but that the relationship ended after they had lived together for approximately one year. In 1996, Michulena began a relationship with Viktorija Timonina. Over the next two years, the couple was victimized by physical attacks, harassment, and vandalism. Michulena and Timonina traveled separately to the United States and, once here, began living together. Timonina's asylum application was granted in September 2002. In November 2002, however, the couple broke up and Michulena started dating Alex Vargas, a United States citizen. Michulena married Vargas, although he later filed an affidavit with immigration authorities asserting that the marriage was not bona fide. Shortly thereafter, Michulena resumed her relationship with Timonina.

The Immigration Judge ("IJ") found that Michulena was not credible, noting that her account contained numerous inconsistencies and was not adequately supplemented with documentary evidence.[1] The Board of Immigration Appeals ("BIA") concluded the

---

[1] Although Michulena filed her asylum application more than a year after she arrived in the United States, the IJ found that it was timely "[b]y stipulation of the Department of
(continued...)

IJ's adverse credibility determination was not clearly erroneous. Michulena filed a timely petition for review of the denial of her asylum claim. Because she does not challenge the denial of withholding of removal or relief under the CAT, we deem those arguments waived. See Bradley v. Att'y Gen., No. 08-4184 , __ F.3d __, 2010 WL 1610597, at *6 n.8 (3d Cir. Apr. 22, 2010) (holding that argument not raised in opening brief is waived).

"[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). We will uphold an adverse credibility determination under the substantial evidence standard "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008) (internal citation omitted). Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible.[2] See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Furthermore, we must uphold a determination regarding the availability of

_____

[1](...continued)
Homeland Security."

[2] The provisions of the REAL ID Act of 2005 that address our review of an adverse credibility finding do not apply in this case because Michulena applied for relief before the Act's effective date. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007).

corroborating evidence unless "a reasonable trier of fact is compelled to conclude that

such corroborating evidence is unavailable." INA § 242(b)(4) [8 U.S.C. § 1252(b)(4)];

see also Sandie v. Att'y Gen., 562 F.3d 246, 252 & n.3 (3d Cir. 2009).

We agree with the Government that Michulena "does not challenge the lion's share

of the agency's adverse credibility determinations." We note, however, that several of

those determinations are suspect, particularly the conclusion that Michulena's two

marriages and the timing of her personal relationships undermined her allegation that she

is a lesbian.[3] Importantly, though, Michulena admitted that she changed her testimony

concerning the date of an attack so that her story would match a medical report in the

record. In particular, Michulena stated in her asylum application that she and Timonina

were attacked on their way home from visiting friends in March 1998. She testified,

however, that the attack occurred in October 1998, shortly before she traveled to the

---

[3] The IJ concluded that Michulena's two marriages were "so fundamentally inconsistent with her claimed social group membership that it shatters her credibility before the court." The BIA clarified that the IJ "did not simply conclude from the fact that [Michulena] was twice-married that her claim to be a lesbian was not credible. Rather, it was the timing of [Michulena's] testimony on behalf of her putative partner's successful application for asylum, her marriage to a United States citizen and pursuit of adjustment of status, and then the reinstatement of her asylum claim based on sexual orientation immediately after the marriage ended that cause the [IJ] to cite this as a factor." We believe, however, that neither Machulena's marriage nor the timing of her relationships provide substantial evidence for concluding that she testified falsely regarding her sexual orientation. Michulena suggested that she was bi-sexual but that "I think I'm more of a lesbian." Moreover, it appears that she married her Latvian husband because he had raped her and she had become pregnant. When asked "why you as a lesbian decided to be married" in the United States, Michulena responded that she wanted to "live a normal life" and have children.

United States. When asked on cross-examination about this discrepancy, Michulena admitted that she corrected the date to October 1998 so that her testimony would correspond to a medical report prepared by a Lativan doctor, which listed Michulena's "date of discharge" as October 27, 1998. This admission adequately supports the adverse credibility determination. See Siewe v. Gonzales, 480 F.3d 160, 170 (2d Cir. 2007) (holding that "where an IJ's finding of fabrication (supported by substantial evidence) serves as the basis for discrediting other evidence, a reviewing court is in no position to conclude that the discrediting of the remaining evidence is unsupported by substantial evidence.").

Michulena suggested that the March 1998 date provided in her asylum application was a mistake, and that she only recognized this error after receiving the medical report. Accepting this argument, however, presents another significant inconsistency. Michulena testified that came to the United States on October 22, 1998. When asked to explain why the medical report listed her discharge date as October 27, 1998,[4] Michulena testified that the "date of discharge" was in fact the date the report was prepared in response to a request made in connection with her asylum application. Indeed, the date which appears next to doctor's signature is "27.10.98." Notably, though, Michulena testified at an

---

[4] Michulena was also asked on cross-examination why a police document indicated that she reported a theft in December 1998. A.R. 273, 707. Michulena claimed that she "submitted the complaint but my mother took that complaint [to the police] because I [had] already left." A.R. 273.

earlier hearing that she did not decide to seek asylum until September 1999, so there presumably would have been no reason to request the report in 1998. Moreover, Michulena's explanation failed to account for the medical report's indication that she was "clobbered in the street . . . the last time on 17.10.98." A.R. 716. In sum, we conclude that the record contains substantial evidence to support the adverse credibility finding and does not compel a contrary finding.

Michulena argues that the IJ and the BIA failed to consider her explanations for the inconsistencies in the record. She does not identify the explanations which were allegedly ignored, and the IJ did indicate why Michulena's explanations were insufficient and noted where she provided no explanation. Michulena also asserts that the IJ "demanded too much" corroborative evidence. We disagree. The IJ reasonably required Michulena to provide medical records and police reports related to specific treatment and attacks, especially considering that she had furnished similar documents as part of her application. See Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006). Michulena concedes "the medical evidence did not match exactly to the injuries that . . . [she] stated occurred to her," but contends that "there was no evidence that the injuries to which [she] testified did not occur." Significantly, though, it is Michulena who carries the "ultimate burden of persuasion in making an asylum claim." Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008).

For the foregoing reasons, we will deny the petition for review.