**IMG-163**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4530
_____

MAME F. SOW,
a/k/a Mame Faba Sow Ep Ndiaye;
CHEIKH MOHAMED FADEL NDIAYE,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A93-432-510 & A89-204-145)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 6, 2011

Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges.

(Filed: July 11, 2011)
_____

OPINION
_____

PER CURIAM

        Mame F. Sow and her husband, Cheikh Mohamed Fadel Ndiaye, petition for

review of an order of the Board of Immigration Appeals ("BIA") which dismissed their

appeal of an Immigration Judge's ("IJ") denial of their application for cancellation of removal. For the reasons that follow, we will dismiss the petition for review.

The petitioners are citizens of Senegal who entered the United States in 1992 as nonimmigrant visitors with authorization to remain for six months. They overstayed their admission period and, in 2008, were charged with removability under Immigration and Nationality Act § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. The petitioners conceded their removability and applied for cancellation of removal under INA § 240A(b)(1) [8 U.S.C. § 1229b(b)(1)], claiming that returning to Senegal would cause their four United States citizen children to suffer exceptional and extremely unusual hardship.[1] Specifically, the petitioners alleged that their children would not have access to adequate medical treatment for their asthma, that their two sons' seafood allergies would prevent them from eating the fish that is the basis of the diet in Senegal, and that their two daughters would be forced by Sow's family to undergo female genital mutilation ("FGM").

The IJ denied relief, concluding that the petitioners failed to demonstrate that removal would result in exceptional and extremely unusual hardship to their children. The IJ concluded that the medical evidence of the children's asthma and allergies was

---

[1] The petitioners also sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture. The IJ denied those forms of relief. Because the petitioners have not challenged those determinations, we will not consider them. Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived).

"meager," noting that "there is nothing . . . to establish that the children have any type of severe, life threatening condition." The IJ also found no significant likelihood that the petitioners' daughters would be subjected to FGM in Senegal. In support of this conclusion, the IJ noted that petitioners were opposed to FGM and that Sow's relatives had been unable to perform the practice on her. The IJ also relied on a 2001 State Department report, which cited a study indicating that approximately 20 percent of the female population in Senegal had undergone some type of FGM. The IJ further noted that while the 2007 State Department Report on Human Rights Practices stated that FGM is still practiced in certain parts of Senegal, the Report also indicated that the government prosecuted those engaging in the practice and collaborated with various groups to educate people about its dangers. Overall, according to the IJ, it appeared "that the cultural acceptance in Senegal of female genital mutilation is decreasing and the practice is being prosecuted and outlawed by the government."

The petitioners appealed to the BIA, asserting only that the IJ "failed to take into account" certain evidence concerning the possibility that their daughters would be subject to FGM. For instance, the petitioners pointed to material allegedly indicating that the percentage of females in Senegal forced to undergo FGM is "much higher" than 20 percent, that FGM is "still widely practiced with impunity," and that there had been no convictions under the law prohibiting FGM. The BIA dismissed the appeal, concluding that the IJ properly considered and weighed the record evidence. The Board held that it was "unable to conclude, even considering all of the factors presented cumulatively in the

3

record and in the [petitioners'] appellate brief, that removal would result in exceptional and extremely unusual hardship as interpreted by" precedential BIA decisions. The petitioners filed a timely petition for review.

Although we have authority to review final orders of removal under INA § 242(a)(1) [8 U.S.C. § 1252(a)(1)], we lack jurisdiction under INA § 242(a)(2)(B)(i) [8 U.S.C. § 1252(a)(2)(B)(i)] to review factual or discretionary determinations such as whether a petitioner has satisfied the hardship requirement for cancellation of removal. Patel v. Att'y Gen., 619 F.3d 230, 232 (3d Cir. 2010). In addition, our jurisdiction is limited under § 242(d)(1) of the INA to cases where the petitioner "has exhausted all administrative remedies available to the alien as of right . . . ." INA § 242(d)(1) [8 U.S.C. 1252(d)(1)]; Abdulrahman v. Ashcroft, 330 F.3d 587, 594–95 (3d Cir. 2003). Although the exhaustion principle is not applied "in a draconian fashion," "[o]ut of respect for the administrative process, we will not require the BIA to guess which issues have been presented and which have not." Lin v. Att'y Gen., 543 F.3d 114, 121-22 (3d Cir. 2008). But, "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." Joseph v. Att'y Gen., 465 F. 3d 123, 126 (3d Cir. 2006) (quotation marks and citations omitted). Exhaustion may occur where the BIA sua sponte considers an issue, see Lin, 543 F.3d at 122-23, or where it is put "on notice that there was a claim of error hovering around the [IJ's] findings . . . ." Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005).

4

In an effort to avoid the jurisdictional bar to review of discretionary aspects of the Board's denial of cancellation of removal, the petitioners argue that the "IJ used the wrong legal standard in his determination" that they failed to establish an exceptional and extremely unusual hardship. In particular, the petitioners argue that the IJ erred by requiring that they demonstrate that their children suffer from a "sever[e] life threatening condition." Importantly, however, the petitioners did not raise any challenge to the standards used by the IJ in either their notice of appeal or in their counseled brief to the BIA. Likewise, while the petitioners now fault the BIA for "focusing on only the two daughters and failing to consider the medical condition of the two boys," they did not raise before the Board any claim related to their sons' health issues. Instead, the record indicates that the petitioners argued to the BIA only that the IJ had "failed to take into account" certain evidence concerning the alleged hardship based on FGM. The BIA did not sua sponte consider the issues that the petitioners are now attempting to raise. Under these circumstances, we conclude that the petitioners have failed to exhaust their administrative remedies.

For the foregoing reasons, we will dismiss the petition for review.

5