NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1474
_____

ALIJA JADADIC,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable William K. Strasser
(No. A072-494-586)

_____

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2012
_____

Before:  AMBRO, CHAGARES and HARDIMAN, Circuit Judges

(Opinion filed:  February 17, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

Alija Jadadic petitions for review of an order by an Immigration Judge ("IJ"), summarily affirmed by the Board of Immigration Appeals, denying his claims for asylum and withholding of removal. For the reasons set forth below, we affirm the decision of the IJ and deny the petition for review.

## I.

Jadadic is a native of the former Yugoslavia and a citizen of what is now Montenegro. He arrived in the United States in 1992 without valid entry documents, and he was placed in exclusion proceedings. A hearing was scheduled in 1993, but the matter was administratively closed when he did not appear. In 1996, Jadadic applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. He stated during the proceedings that he had not received notice of the 1993 hearing.

Fast forward to 2004, when Jadadic's evidentiary hearing finally took place. In his testimony and affidavit in support of his relief applications, Jadadic stated that he is an ethnic Albanian Muslim from Plav, Montenegro. In 1990, he and his parents and two brothers joined the SDA (the Party of Democratic Action), a party that opposed Slobodan Milosevic, then President of the Republic of Serbia. Jadadic's brother was recruited to serve in Milosevic's special police, where his superiors forced him to aid in quashing Muslim demonstrations. When the brother's term of duty ended, he refused the demand to re-enlist. The special police responded by jailing him for two months and beating him while in detention. The brother escaped in February 1992 and fled to the United States, which ultimately granted him asylum.

After Jadadic's brother escaped, the special police, according to Jadadic, frequently went to the family's home in search of him. They would force the family outside and upend furniture, destroy walls, and ransack the house, ostensibly looking for weapons. The police also beat Jadadic two or three times, demanding to know the whereabouts of his brother. Subsequently, Jadadic himself was summoned to report for duty with the special police. Fearing that he would suffer his brother's fate and be forced to kill civilians and Muslims as part of Milosevic's regime, he fled Yugoslavia and went to Germany. Later in 1992 he entered the United States from Sweden.

The IJ denied Jadadic's applications for relief, finding that he had shown neither past persecution nor a well-founded fear of future persecution "due to the passage of time and the change of circumstances." The IJ noted that if the case had been decided earlier, from the year of Jadadic's departure through 1998, the outcome might have been different. However, that was no longer true because the "leadership of Yugoslavia that was involved in ethnic cleansing has basically been removed from power." In 2005, the Board of Immigration Appeals affirmed without opinion. In 2011, the Board reissued its prior decision, holding that Jadadic had demonstrated that his prior counsel was ineffective for failing to file a timely petition for review. This petition for review followed.

**II.**

The Board of Immigration Appeals had jurisdiction over this case pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252. Where, as here, the Board summarily affirms the IJ's opinion, "we review the IJ's decision as the final

3

administrative determination." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010).

We treat the IJ's findings of fact as "conclusive unless any reasonable adjudicator would

be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review

questions of law *de novo*. *Totimeh v. Att'y Gen.*, --- F.3d ---, 2012 WL 89580, at *3 (3d

Cir. Jan. 12, 2012).

**III.**

Jadadic has applied for asylum and withholding of removal.[1] The Attorney

General or the Secretary of Homeland Security may grant an alien asylum provided that

he is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C.

§ 1158(b)(1)(A). The definition of "refugee" that applies here is "any person . . . who is

unable or unwilling to return to" his home country "because of persecution or a well-

founded fear of persecution on account of race, religion, nationality, membership in a

particular social group, or political opinion." *Id.* § 1101(a)(42)(A). The applicant bears

the burden of proof to establish that he is a refugee. *Id.* § 1158(b)(1)(B)(i).

Refugee status may not be based solely on past persecution if the IJ finds, by a

preponderance of the evidence, that "[t]here has been a fundamental change in

circumstances such that the applicant no longer has a well-founded fear of persecution in

the applicant's country of nationality . . . ." 8 C.F.R. § 208.13(b)(1)(i)(A). The

Government bears the burden of proof to demonstrate a change in circumstances in the

---

[1] Before the IJ, Jadadic had also sought relief pursuant to the United Nations Convention Against Torture. However, on appeal, he has not challenged the IJ's conclusions under the Convention, and thus has waived any argument on that ground. *See Bradley v. Att'y Gen.*, 603 F.3d 235, 243 n.8 (3d Cir. 2010).

4

applicant's country. *Id.* § 208.13(b)(1)(ii). "Even if the presumption of future persecution is rebutted, an applicant can still be granted asylum if he or she 'has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution' or 'has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.'" *Sheriff v. Att'y Gen.*, 587 F.3d 584, 590 (3d Cir. 2009) (quoting 8 C.F.R. § 208.13(b)(1)(iii)).

Whereas a grant of asylum is discretionary, withholding of removal is mandatory. "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To receive the grant of withholding, the alien must establish a "clear probability" that it is "more likely than not that the alien would be subject to persecution on one of the specified grounds." *INS v. Stevic*, 467 U.S. 407, 429-30 (1984).

The District Court's conclusion that Jadadic had not suffered past persecution is open to question. We, along with our sister Courts of Appeals, have recognized that "refugee status [may be] based on avoidance of military service . . . 'if the alien would be associated with a military whose acts are condemned by the international community as contrary to the basic rules of human conduct.'" *Ilchuk v. Att'y Gen.*, 434 F.3d 618, 625 (3d Cir. 2006) (quoting *M.A. v. INS*, 899 F.2d 304, 312 (4th Cir. 1990) (*en banc*)); *see also Islami v. Gonzales*, 412 F.3d 391, 397 (2d Cir. 2005) (holding that this rule "clearly"

5

applies to a Muslim Albanian conscripted into the Milosevic-era Yugoslavian army); *Mekhoukh v. Ashcroft*, 358 F.3d 118, 126 (1st Cir. 2004). Jadadic asserts that had he remained in the former Yugoslavia, he would have been required to commit acts of violence against his own people. The international community condemned such acts with a coordinated military campaign and with the first-ever indictment of a sitting head of state for war crimes.

However, we need not decide whether the threat of compulsory service in the special police constitutes past persecution in this context.[2] For we believe that the Government has satisfied its burden of demonstrating a "fundamental change in circumstances" in Montenegro such that Jadadic no longer faces a well-founded fear of persecution there. As the IJ recognized, "[t]he leadership of Yugoslavia that was involved in ethnic cleansing has basically been removed from power. . . . [T]he government of Yugoslavia has now taken a more orderly course of action." As we

---

[2] In addition to the threat of conscription, Jadadic cites as evidence of past persecution the searches of his family's home and beatings of him by police seeking his brother. While we do not condone such acts, they do not rise to the level of past persecution under our law. *See Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) ("While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution.").

The seeming persecution of Jadadic's brother likewise is not relevant here. The experience of family members may be relevant, but this is not a case where "there is a high degree of factual similarity between the applicant's claim and those of his family members, and where his claim of political persecution rests on that very familial relationship." *Cham v. Att'y Gen.*, 445 F.3d 683, 693 (3d Cir. 2006). Jadadic's brother allegedly was forced into the special police and imprisoned in deplorable conditions for two months; neither fate befell Jadadic.

recognized at the time, the State Department's 2003 Country Report indicated that in Montenegro "police occasionally beat suspects during arrest and detention, but there has been generally improved respect by the police for human rights." *Berishaj v. Ashcroft*, 378 F.3d 314, 329 (3d Cir. 2004); *see also Prela v. Ashcroft*, 394 F.3d 515, 519 (7th Cir. 2005) ("Yugoslavia . . . has undergone significant change since 1999."). The IJ incorporated this report into the record and relied on it in his ruling.

Under our law, these general improvements in country conditions are not enough. "[G]eneral evidence of improved country conditions will not suffice to rebut credible testimony and other evidence establishing past persecution; evidence of changed country conditions can successfully rebut the presumption *only* if it addresses the specific basis for the alien's fear of persecution." *Sheriff*, 587 F.3d at 591 (emphasis in original) (citing *Berishaj*, 378 F.3d at 327-28). Jadadic's specific fear is that "he would be arrested or killed by the 'police' who are 'the same people' who harmed his brother and 'know that [his] family was against Milosevic.'" Jadadic Br. at 22 (quoting A.R. at 214, 216).

However, the evidence before us is sufficiently related to Jadadic's individual fear to sustain the holding of the IJ. The Montenegro section of the 2003 Country Report describes "an overall decline in police brutality and other abuses." There is no indication that the scattered police beatings were politically motivated, and officers who were involved were under investigation. Leaders of the Milosevic-era special police had been indicted by the International Criminal Tribunal for the Former Yugoslavia and transferred to The Hague. The 2010 Country Report indicates further progress in these areas. *See* U.S. Department of State, Montenegro: Country Reports on Human Rights Practices—

7

2010 (Apr. 2011) at 4-5, 11-12; *Nbaye v. Att'y Gen.*, 665 F.3d 57, 59-60 (3d Cir. 2011) (recognizing Country Reports not in the record for limited purposes). We conclude that this evidence is not "such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), and thus must affirm on the basis of the IJ's findings of fact.

Because Jadadic "has not met [his] burden of proof with respect to asylum," he "is also not eligible for withholding of removal," which presents a more demanding standard. *Sioe Tjen Wong v. Att'y Gen.*, 539 F.3d 225, 236-37 (3d Cir. 2008). For these reasons, we must deny Jadadic's petition for review.