NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2322
_____

XING QIANG ZHUO,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-162-432)
Immigration Judge:  Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2012
Before:  SCIRICA, JORDAN and GREENBERG, Circuit Judges.

(Filed: October 22, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM

        Xing Qiang Zhuo petitions for review of an order of the Board of Immigration

Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") order of

removal.  We will deny the petition for review.

The proceedings in this matter originated in 2002, in New York, and have not followed a straightforward course. Because the parties are familiar with the background, we present a summary. Zhuo is a native and citizen of China who entered the United States in 2000 without inspection or parole. The Immigration and Naturalization Service, now the Department of Homeland Security, charged him with removability for being an alien present without having been admitted or paroled after inspection by an immigration officer. Zhuo conceded his removability but applied for asylum and withholding of removal, claiming that his wife had been forcibly sterilized after the birth of their second son, and that he had to pay a fine of 3,000 RMB. After a hearing, the IJ found Zhuo not credible, denied Zhuo's applications, and ordered his removal to China. In 2003, the BIA agreed with the adverse credibility determination and dismissed Zhuo's appeal.

Zhuo filed a motion to reopen, supported in part by his wife's affidavit. The BIA granted the motion and remanded the matter to the IJ. On remand, Zhuo again applied for asylum, withholding of removal, and also requested relief under the Convention Against Torture ("CAT"). In 2004, the IJ again found Zhuo not credible and denied relief on his claims. In 2006, the BIA agreed with the IJ's decision and dismissed Zhuo's appeal. In 2007, the Court of Appeals for the Second Circuit granted Zhuo's petition for review, concluding that the IJ's adverse credibility determination was flawed, and that Zhuo's testimony was sufficient to allege an asylum claim on the basis that his wife was involuntarily sterilized by government officials. The Second Circuit remanded the matter to the agency.

2

In 2008, on remand, Zhuo sought and received a change of venue of the agency proceedings to Newark, New Jersey. Under prior BIA precedent, a husband who established that his wife underwent a forced abortion or involuntary sterilization was per se entitled to refugee status. See Matter of C-Y-Z-, 21 I. & N. Dec. 915 (BIA 1997). However, the Attorney General overruled that precedent in of J-S-, 24 I. & N. Dec. 520 (A.G. 2008), concluding that the spouses of those who have undergone forced abortion or involuntary sterilization are not per se entitled to asylum under INA § 101(a)(42), 8 U.S.C. § 1101(a)(42).[1] Acknowledging the change in law, Zhuo argued on remand that he was persecuted for "other resistance" to China's coercive population control laws.

The IJ held a hearing on December 7, 2009. Zhuo testified that he left China for reasons of economic persecution following the involuntary sterilization of his wife in 1992. He stated that officials imposed a fine of 3,000 RMB, but they did not confiscate any property or withhold benefits. At that time, Zhuo was earning 600 RMB per month as a carpenter (7,200 RMB per year), while incurring 640 RMB in monthly expenses, so he borrowed money from his brothers to make ends meet. To pay the fine, he borrowed from villagers 3,000 RMB, with monthly interest of three percent. Zhuo stated that in 1994, the villagers came to his house asking for the money, and they threatened to kill him if he did not pay back the loan, but he and his family did not experience any problems with the villagers after that. Eventually, Zhuo left for the United States in 2000. After he departed, the Chinese government did not contact his wife, and their

---

[1] We independently reached the same conclusion in Lin-Zheng v. Attorney General, 557 F.3d 147 (3d Cir. 2009) (en banc).

children remained registered in the household registry. Zhuo did not have enough money to repay the villagers until after he came to the United States, but he stated that the debt has been paid.

After considering the testimony and other evidence in the record, the IJ denied relief and ordered Zhuo's removal. The IJ found that the 3,000 RMB fine did not constitute persecution, and that Zhuo did not demonstrate a fear of future persecution. Thus, the IJ concluded that Zhuo was not entitled to asylum or withholding of removal. Further, the IJ denied the CAT claim because Zhuo did not present evidence that he is more likely than not to be tortured if removed to China. On April 13, 2012, the BIA dismissed Zhuo's appeal. The BIA agreed with the IJ's determinations that Zhuo did not establish eligibility for asylum based on past economic persecution and did not show a well-founded fear of future persecution, and accordingly, Zhuo also did not meet the higher burden of proof required for withholding of removal. The BIA also noted that the claim of death threats made by the villagers to hasten the repayment of the loan was insufficient to show persecution, because the record evidence does not show a nexus between the private lenders and the government, and because persecution must be committed by the government or individuals that the government is unwilling or unable to control. Further, the BIA rejected Zhuo's claim based on psychological harm that he suffered following his wife's sterilization because he submitted no medical evidence to support the claim. Moreover, the BIA stated that the IJ properly determined that Zhuo did not satisfy the requirements for obtaining relief under the CAT.

4

This petition for review followed. We have jurisdiction pursuant to 8 U.S.C. § 1252. The BIA agreed with the IJ's decision and added its own reasoning, and thus, we review the decisions of both the IJ and the BIA. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's factual determinations under the substantial evidence standard. See id. at 251. The agency's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the agency's legal decisions. See Sandie, 455 F.3d at 251.

Although our decision in Lin-Zheng forecloses Zhuo's claim of per se asylum eligibility based on his wife's involuntary sterilization, he may establish a basis for asylum if he shows that he suffered past persecution or a well-founded fear of persecution in China for "other resistance" to the Chinese government's coercive population control program. See Lin-Zheng, 557 F.3d at 157. Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). However, it "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." Id.

We have considered the record and conclude that it does not compel a finding that Zhuo suffered past persecution, or has a well-founded fear of future persecution, on account of his "other resistance" to China's coercive population control policies. Although "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution," Li v. Att'y Gen. of the U.S.,

5

400 F.3d 157, 168 (3d Cir. 2005), Zhuo did not show that the 3,000 RMB fine rose to that level. As the BIA noted, and as is shown in the record, Zhuo paid the fine by borrowing money from villagers unaffiliated with the Chinese government. In time, he was able to repay his debt to those private lenders, with interest, while living in the United States. Zhuo did not allege that the Chinese government deprived him of his liberty, food, housing, employment, or other life essentials. [2]

In the statement of facts section of his brief, Zhuo states that he also seeks asylum based on other examples of "other resistance," namely, by hiding his wife's pregnancy, by planning and arranging funds for his escape, and by coming to the United States and applying for asylum. Petitioner's Brief at 3. We lack jurisdiction to consider these claims because he did not raise them as independent grounds for asylum during the agency proceedings. See 8 U.S.C. § 1252(d)(1); Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005). We add that Zhuo does not present any argument concerning his claim of psychological harm from his wife's forced sterilization, and we will not consider that claim any further. See Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived).

As for the incident in which Zhuo alleged that his life was threatened concerning the loan repayment, we agree with the BIA that the evidence does not reflect that the threat was issued by the government, or that the villagers who threatened Zhuo are somehow connected with the government or are individuals that the government is

---

[2] Zhuo states in his brief that he would have been denied a number of government benefits if the fine remained unpaid. Because Zhuo did pay the fine, we need not

unwilling or unable to control. See Garcia v. Att'y Gen., 665 F.3d 496, 503 (3d Cir. 2011). On this point, Zhuo refers us to the psychological report in the record indicating that he is "borderline in intellectual functioning." (A.R. 000245.) In light of that evidence, Zhuo contends that he could not have been expected to provide "detailed or coherent testimony, where the government does not ask questions to [elicit] such responses." Petitioner's Brief at 4. We interpret his assertions as an argument that his failure to establish a nexus between the private lenders and the Chinese government should not be held against him. We are not persuaded by this argument. Zhuo does not contend that such nexus actually exists. Regardless, Zhuo was represented by counsel in the agency proceedings, and counsel could have presented that information for the record by eliciting Zhuo's testimony, or by other means.

Because Zhuo did not demonstrate eligibility for asylum, we agree with the BIA that he was unable to meet the higher standard applicable to applications for withholding of removal. See Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008). Zhuo does not present any argument concerning his CAT claim, and thus, he has waived any challenge to the denial of protection under the CAT. See Bradley, 603 F.3d at 243 n.8.

For the above reasons, we will deny the petition for review.

---

consider whether the hypothetical denial of benefits would constitute persecution.

7