**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2378
_____

QI BIN SUN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-252-628)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2013
Before:  FUENTES, VANASKIE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: April 9, 2013)
_____

OPINION
_____

PER CURIAM

Qi Bin Sun petitions for review of the final removal order of the Board of

Immigration Appeals ("BIA").  For the reasons that follow, we will deny the petition for

review.

Sun is a native and citizen of China. In 2007, he entered the United States without inspection. Sun filed an asylum application, alleging that Chinese family planning authorities forced his wife to undergo an abortion, and that he feared being forced to undergo involuntary sterilization if he returned to China. Sun's case was referred to an Immigration Judge ("IJ") for adjudication. Sun conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He later amended his application to allege his fear of future persecution based on his religious conversion to Christianity in 2008.

Sun testified in support of his claims at a hearing before the IJ. He stated that he is married and has one daughter. In 2002, his then-girlfriend underwent a required pre-marriage physical examination that revealed that she was two months pregnant. An official informed Sun that the pregnancy must be aborted because it violated China's family planning policy. Sun unsuccessfully pleaded with the official to allow the pregnancy. Other officers appeared, and while Sun and the officers were "pushing and dragging each other," Sun was elbowed and struck in the chest. The officials took Sun's wife to the hospital and forcibly performed an abortion. Afterwards, Sun had to pay a fine of 3,000 RMB to obtain the marriage certificate, and he borrowed money from relatives to do so. He expressed fear of returning to China because he wanted to have more children and because he and his wife would be subject to forced sterilization.

Sun also testified that he feared persecution because of his Christian faith. After he entered the United States, he began attending church regularly and was baptized in July 2008. Sun stated that he does not believe that he can practice his religion in China

2

because he was informed by church members, television, and newspapers that there is no freedom of religion in China. He further stated that he would avoid authorized churches under communist party leadership and would instead attend an underground church, and that he feared being persecuted if his religious practice were discovered. Finally, Sun expressed his fear of being jailed or beaten if he returned to China because he came to the United States illegally. In addition to his own testimony, Sun presented the testimony of a leader of the religious group meetings that he attends.

After considering the testimony and other evidence in the record, the IJ denied Sun's applications for relief and ordered his removal to China. On April 19, 2012, the BIA dismissed Sun's appeal. Sun's petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). The BIA agreed with the IJ's decision and added its own reasoning, and thus, we review the decisions of both the IJ and the BIA. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's factual determinations under the substantial evidence standard. See id. at 251. The agency's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the agency's legal decisions. See Sandie, 455 F.3d at 251.

Sun argues that he has established past persecution by opposing China's family planning policy, primarily relying on his wife's forced abortion. Our en banc decision in Lin-Zheng v. Attorney General, 557 F.3d 147 (3d Cir. 2009) (en banc), forecloses Sun's claim of automatic asylum eligibility based on his wife's involuntary abortion. See Lin-Zheng, 557 F.3d at 156. Although Sun urges us to reverse the decision in Lin-Zheng, we

3

must reject this argument, as we are bound by our precedent. Cf. Third Circuit I.O.P. 9.1 (no subsequent panel of this Court overrules the holding in a precedential opinion of a previous panel). However, he may establish a basis for asylum if he shows that he suffered past persecution or a well-founded fear of persecution in China for "other resistance" to China's coercive population control program. See Lin-Zheng, 557 F.3d at 157.

We have considered the record and conclude that it does not compel a finding that Sun suffered past persecution, or has a well-founded fear of future persecution, on account of his "other resistance" to China's coercive family planning policies. Although "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution," Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005), Sun does not present any argument that the 3,000 RMB fine rose to that level. We need not consider the claim any further. See Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that argument not raised in opening brief is waived).[1] It suffices to note that the record shows that Sun was able to pay the fine by borrowing money from relatives. Sun also argues that he suffered persecution when he was hit while trying to prevent officials from taking his wife for the abortion. However, as the BIA noted, Sun did not state that he suffered injuries requiring any medical treatment, and he points to no evidence that he suffered harm that constituted persecution. See Fatin

---

[1] We add that Sun also does not raise any argument concerning his claim that he has a well founded fear of future persecution because he left China illegally, and accordingly, he has waived this claim as well.

4

v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993) (persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). In addition, Sun argues that he is eligible for relief because his wife was required to have an IUD inserted after their daughter's birth in 2004. Although he states that he "personally opposed such inhumane policy" because he and his wife wish to have more children, Petitioner's Brief at 18, he does not point to evidence that he resisted that action to support a persecution claim.

We now turn to Sun's religious persecution claim. To establish a well founded fear of persecution in China based on the basis of his newfound Christianity, Sun was required to show a subjective fear of persecution, supported by objective evidence that persecution is a reasonable possibility. See Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). Sun can satisfy the objective prong of this standard either by showing that he would be individually selected for persecution, or by demonstrating a "pattern or practice" of persecution of Christians in China. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)).

Substantial evidence supports the BIA's determination that Sun failed to demonstrate his eligibility for relief. The documentary evidence in the record, which includes the International Religious Freedom Report 2008, does not compel the conclusion that there are continuous and widespread instances of harm, or threats of harm, to Chinese Christians. The Report acknowledges that the Chinese government has harassed underground Christian groups, but it also indicates that in some regions, unregistered churches existed with minimal government supervision or intrusion, and that

5

most Christian groups--the majority of which are not state-sanctioned--operated openly and carry out public activities. Moreover, although Sun asserts his fear that "it will not be long before [he would] be persecuted" in China because he will "evangelize [his] faith" and join an underground church, Petitioner's Brief at 21, he has not made a showing that he faces a particularized threat of persecution.[2]

As for Sun's CAT claim, the BIA noted that Sun did not present sufficient evidence to establish that it is more likely than not that he will be tortured by or with the acquiescence of governmental authorities if removed to China. See 8 C.F.R. § 1208.16(c)(2). In his brief, Sun argues only that he has been persecuted, and that he will be persecuted, on account of his resistance to family planning officials when they took his wife to have her pregnancy involuntarily aborted. He does not advance any other arguments in support of his claim that it is more likely than not that he will be tortured. We conclude that the record is insufficient to compel the conclusion that Sun is entitled to CAT relief. See Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005) (an act must cause severe physical or mental pain or suffering to constitute torture under the CAT).

For the foregoing reasons, we will deny the petition for review.

---

[2] We add that Sun relies on the 2010 Religious Freedom Report, which indicates that in some parts of China, local authorities sometimes punish members of unregistered religious groups. Because the report is not part of the record of agency proceedings, this Court cannot consider it. See 8 U.S.C. § 1252(b)(4)(A); Berishaj v. Ashcroft, 378 F.3d 314, 331 (3d Cir. 2004). In any event, the portion of the report quoted by Sun does not suggest that such abuses are sufficiently "systemic, pervasive, or organized" to constitute a pattern or practice. See Wong v. Att'y Gen., 539 F.3d 225, 233 (3d Cir. 2008).