**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETER JAMES BINGHAM,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 09-70107

Agency No.
A095-760-810

OPINION

On Petition for Review of an Order of the
Department of Homeland Security

Argued and Submitted
November 4, 2010—San Francisco, California

Filed March 23, 2011

Before: Ronald M. Gould and Consuelo M. Callahan,
Circuit Judges, and Edward R. Korman,
Senior District Judge.*

Opinion by Judge Gould

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

3949

## COUNSEL

Jaime Jasso, Law Offices of Jaime Jasso, Westlake Village, California, for the petitioner.

Tony West, Assistant Attorney General, Richard M. Evans, Assistant Director, and Brooke Maurer, Attorney (argued), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

GOULD, Circuit Judge:

Petitioner Peter James Bingham petitions for review of an order of removal issued by the Department of Homeland Security ("DHS"). He contends that the enforcement of a written waiver of rights associated with his entry into the United States through the Visa Waiver Program and the summary issuance of an order of removal without a hearing violate his due process rights. We have jurisdiction under 8 U.S.C. § 1252(a). We deny the petition for review.

# I

Bingham is a citizen of the United Kingdom. He was admitted to the United States on March 11, 2007 under the terms of the Visa Waiver Program. The Visa Waiver Program ("VWP"), first implemented as a pilot program in 1986, authorizes the Attorney General and Secretary of State to waive the visa requirements for entry to the United States for aliens that are nationals of certain designated countries, and who meet a series of statutory requirements. 8 U.S.C. § 1187. These VWP entrants may be admitted to the United States as tourists for a period of ninety days. § 1187(a)(1). In exchange for this benefit, aliens seeking admission to the United States without first obtaining a visa must waive their right "to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States" and "to contest, other than on the basis of an application for asylum, any action for removal of the alien." § 1187(b). A VWP entrant's removability "shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability" unless the alien applies for asylum. 8 C.F.R. § 217.4(b). We have described the waiver provision as "the linchpin of the program," in that it "assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays." *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005).

Under the terms of the VWP, Bingham was admitted for a period of ninety days,[1] but he overstayed that term by more than a year. On December 5, 2008, Bingham was stopped by

---

[1]DHS documents and the government's brief state that Bingham was entitled to remain in the United States until September 11, 2007. However, that would amount to a period of 180 days from entry, not 90 days. In any case, the parties agree that Bingham overstayed the authorized period.

a police officer and arrested for presenting false citizenship or resident alien documents under California law. Bingham was not charged with an offense, but was released to the custody of immigration authorities. Bingham has remained in immigration detention since then. On December 12, 2008, the Department of Homeland Security ordered Bingham removed without issuing a Notice to Appear or holding a removal hearing. Rather, DHS officials determined that Bingham was removable as an alien admitted under the VWP who had remained in the United States beyond the authorized period and ordered him removed.

Bingham timely filed a petition for review of the order of removal. The government submitted the administrative record for the appeal on November 27, 2009, after an extension of time to do so. The administrative record did not contain a copy of the actual waiver, the I-94W Nonimmigrant Visa Waiver Arrival/Departure Form (Form I-94W), signed by Bingham. However, shortly before oral argument, the government successfully moved to supplement the administrative record with the signed waiver form. Bingham moved to reconsider the grant of leave to supplement the record, arguing that he should be permitted to respond in writing on the significance of the document, because his principal arguments on appeal related to the nonexistence of the signed waiver. Following oral argument, we permitted supplemental briefing from both parties on the significance of the signed waiver form to the issues raised in this petition for review.

## II

**[1]** We first address whether we have jurisdiction to entertain the questions raised in the petition for review. Bingham contends that we have jurisdiction over final orders of removal issued by DHS under § 1252(a)(1). The government agrees that we have jurisdiction over Bingham's removal order but adds the caveat that because VWP entrants sign a waiver of their right to contest removal (except through an

application for asylum, for which Bingham has not applied), the only question before us is whether Bingham waived those rights. Section 1252 supports the parties' assertions regarding jurisdiction. Though a VWP entrant waives the right to contest removal except on the basis of asylum, § 1187(b)(2), a VWP entrant can invoke § 1252(a) to challenge a final order of removal on the basis that he or she is not at all subject to the VWP regime.

[2] Several other courts of appeals similarly have determined that they have jurisdiction to review removal orders issued by DHS where the VWP entrant challenges the validity of the waiver. *Bayo v. Napolitano*, 593 F.3d 495, 500 (7th Cir. 2010) (en banc) (citing § 1252(a)(1) to establish its jurisdiction over a petition for review from an administrative order of removal against a VWP entrant); *Bradley v. U.S. Attorney General*, 603 F.3d 235, 237 n.1 (3d Cir. 2010) (same); *see also McCarthy v. Mukasey*, 555 F.3d 459 (5th Cir. 2009). Just as did our sister circuits, we conclude that we have jurisdiction to review the final order of removal issued by DHS against a VWP entrant and may address the limited question of whether Bingham has presented any viable claim that his waiver was invalid and that he was summarily removed in violation of his rights. *See Freeman v. Gonzales*, 444 F.3d 1031, 1034 (9th Cir. 2006) ("Notwithstanding that the no-contest clause severely restricts an alien's ability to seek review of a removal decision, the alien may still claim that she is not subject to the VWP procedures at all or that the law requires that she be brought before an immigration judge . . . prior to removal."). With jurisdiction established, we proceed to the merits.

### III

Bingham makes several arguments seeking to support his idea that the waiver of rights he signed on entry is invalid, and to obtain the relief of a removal hearing before an immigration judge. In his opening brief, Bingham asserted that the

government did not establish that the order of removal was based on "clear and convincing evidence," because the government had not produced a copy of the signed waiver of rights, Form I-94W, for the administrative record. While this appeal was pending, however, the government gained a copy of the Form I-94W, signed by Bingham, and successfully moved us to supplement the administrative record.[2] We allowed the parties to file supplemental briefing in light of the record supplementation. Bingham's claims premised on the absence of the signed Form I-94W in the administrative record now need not be addressed.

Bingham's remaining arguments presented in his briefing are: (1) the language of the Form I-94W waiver he signed at the airport to gain admission was insufficient to inform him of the rights he was waiving, (2) the waiver is unenforceable under contract principles because Bingham did not know about the waiver requirement until he landed in the United States and received the form, and (3) the waiver violates the unconstitutional conditions doctrine. These attempts to invalidate the waiver on its face fail.

[3] First, Bingham's allegation that the language of the waiver form he signed on entry was insufficient to constitute waiver of the right to a hearing before an immigration judge is refuted by examination of the waiver language. The Form I-94W signed by Bingham has this language:

> WAIVER OF RIGHTS: I hereby waive any rights to review or appeal of an immigration officer's determination as to my admissibility, or to contest, other

---

[2]Bingham's motion to reconsider the grant of leave to supplement the record is denied. The government relied upon a screen shot of the signed Form I-94W in making its determination as to removability, but was unable to locate the scanned version of the form until much later in these proceedings. Expansion of the administrative record is appropriate under these peculiar circumstances. *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

than on the basis of an application for asylum, any action in deportation.

Bingham first contends that the version of Form I-94W he signed referred to "any action in *deportation*" rather than "any action in removal" and does not reflect the statutory language of § 1187(b). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 merged what had been known as deportation and exclusion hearings into a broader category called removal proceedings. *Hose v. INS*, 180 F.3d 992, 994 n.1 (9th Cir. 1999) (en banc). The use of the term "deportation" instead of "removal" does not strip the waiver language of its force and meaning. Although VWP entrants waive what is now referred to as a "removal" hearing, the term "action in deportation" adequately describes the hearing in which an admitted alien is found to be "deportable" from the United States for purposes of the waiver. *See, e.g.*, 8 U.S.C. §§ 1227(a), 1229a(e).

**[4]** Bingham complains further that the phrase "any action in deportation" is imprecise because it does not distinguish whether the alien is foregoing the opportunity to challenge the *finding* of deportability only, or whether he is additionally waiving the opportunity to contest his physical removal from the United States, which in Bingham's view implies the chance to apply for forms of affirmative relief from removal. We reject that there is ambiguity in the waiver provision. The waiver tells the arriving alien that by signing the Form I-94W he is waiving "any rights . . . to contest . . . any action in deportation." A deportation or removal "action" includes both the finding of a statutory basis for removal and determinations that resolve any issue of relief from removal. The waiver's use of the term "action in deportation" means that the alien waives the opportunity to contest any issue that might be raised in a removal proceeding. The express exception for an application for asylum reinforces that the waiver language encompasses applications for relief from removal.

**[5]** Bingham next claims that the waiver is unenforceable if analyzed under contract principles because, under the VWP as implemented when he arrived, an alien does not receive the waiver form and learn of the waiver requirement until he is en route to the United States. He describes the kind of information readily available to British citizens on the website of the United States consulate in London[3] at the time he made travel arrangements, and asserts that the website did not provide crucial information about the waiver requirement. He contends that under the common law of contracts, the waiver would be considered unenforceable "under a host of formation defenses such as lacking the required bargained-for exchange of consideration, mistake or simple unconscionability among others." Yet as the Seventh Circuit commented in *Bayo*, "[i]f the VWP waiver were a garden-variety contract," which Bingham presumes for purposes of this argument, any argument that the waiver was invalid because the alien did not understand it would "almost certainly fail." *Bayo*, 593 F.3d at 502. This is because a party who signs a written contract "in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them." 27 Richard A. Lord, *Williston on Contracts* § 70:113 (4th ed. 2009). As Bingham has not alleged any fraud or wrongful act by the government, his claim fails. Also, Bingham reaped the benefits of the VWP by entering the country without a visa and, under the contract principles he invokes, cannot now avoid the consequences of the waiver by "claiming to have relied on the representations of another as to its contents." *Id.*

---

[3]Bingham's motion to take judicial notice of the former contents of the consulate website and the websites of several air carriers is denied. The content of particular websites on a specified date in 2007 is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. Moreover, even if we were to take judicial notice of the sparsity of information in the websites urged by Bingham, it would not alter our decision, because that would not vitiate the contract signed by Bingham before entry, there being no fraud or wrongful act of the government.

**[6]** Finally, Bingham's claim that the waiver violates the unconstitutional conditions doctrine is without merit. The unconstitutional conditions doctrine says that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also United States v. Scott*, 450 F.3d 863, 866-67 (9th Cir. 2006). Bingham argues that the VWP impermissibly conditions the privilege of being admitted to the United States on a waiver of constitutional due process. Assuming without deciding that VWP entrants enjoy constitutional due process protections—a question of substantial debate between the parties—the doctrine has no application in this context because Bingham's right to enter the United States was not conditioned on a waiver of constitutional rights. He was free to decline to waive his rights to contest removal and seek entry by way of a tourist visa. *Cf. Gilmore v. Gonzales*, 435 F.3d 1125, 1139 (9th Cir. 2006). Also, the government may condition the grant of a discretionary benefit on a waiver of rights "if the condition is rationally related to the benefit conferred." *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 700 (9th Cir. 1984); *see also Dolan v. City of Tigard*, 512 U.S. 374, 386 (1994). The condition of waiving the ability to contest removal is closely related to the benefit of entering the United States under the VWP. Conditioning entry on waiver—the exchange of a truncated entry procedure for a truncated removal procedure—is the "linchpin" of the program that allows it to operate, which courts nationwide have repeatedly acknowledged and approved. *See, e.g.*, *Handa*, 401 F.3d at 1135 ("[T]he linchpin of the program is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.").

## IV

To the extent Bingham's arguments amount to an assertion that he did not understand the waiver when signed and did not waive his rights knowingly, these arguments are without merit. Such a claim requires a threshold determination that a VWP entrant waives constitutional due process rights to a removal hearing—despite the fact that the waiver is made by an alien at the border seeking entry—and therefore must be knowing and voluntary to be effective. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Fuentes v. Shevin*, 407 U.S. 67, 94 n.31 (1972) (noting that even in the civil area, we do not "presume acquiescence in the loss of fundamental rights" and that courts "indulge every reasonable presumption against waiver"). We have yet to pass upon the constitutional implications of the VWP waiver or decide whether it must be knowing and voluntary.[4]

[7] We need not resolve this question here, however, because assuming without deciding that the VWP waiver must be knowing and voluntary, Bingham has not shown that his allegedly unknowing waiver resulted in prejudice, as required to prevail on a claim grounded in due process. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000) ("To prevail on a due process challenge to deportation proceedings, [the alien] must show error and substantial prejudice. . . . A showing of prejudice is essentially a demonstration that the alleged viola-

---

[4]The Fifth and Seventh Circuits have accepted the view that a waiver of rights to contest removal by an alien seeking entry under the VWP must be knowing and voluntary to comport with due process. *See Bayo*, 593 F.3d at 502-05 (concluding that waiver of the right to a full immigration hearing implicates the constitutional right to due process that aliens acquire upon entry, and therefore must be done both knowingly and voluntarily); *Nose v. Attorney General*, 993 F.2d 75, 79 (5th Cir. 1993) ("Although due process rights may be waived, . . . such a waiver must be made knowingly and voluntarily.") (citations omitted).

tion affected the outcome of the proceedings . . . .") (citations omitted). As the Seventh Circuit has explained:

> Had he known what the waiver said, [the alien] would have had two options, either of which would have led to summary removal. If he had signed the waiver anyway, knowing full well what it said, he would be in the same situation as he is now. If he had refused to sign, he would have been removed summarily at the border because he did not have a proper visa.

*Bayo*, 593 F.3d at 506; *see also Bradley*, 603 F.3d at 240 (adopting the reasoning of *Bayo*). Similarly, Bingham has not shown that, but for his allegedly unknowing waiver, he would have been able to contest his removal on the basis of marriage to a United States citizen or any other ground.[5] The argument that, had he been fully informed, he would have declined to sign the waiver, returned to the United Kingdom, obtained a tourist visa, returned to the United States, and married a United States citizen, thus allowing him to apply for adjustment of status, is too speculative to establish the requisite prejudice. Bingham's claims—insofar as they are premised on the notion that his waiver was not knowing and voluntary and therefore cannot constitutionally be enforced—do not entitle him to relief. If he had refused to sign the waiver, authorities would not have permitted entry.

## V

The procedure required by the VWP is neither complex nor unfair. The alien signing the VWP form gives up any right to

---

[5]Bingham states that he has a United States citizen fiancee, and that he "has suffered prejudice that may have been prevented had he been placed in removal proceedings instead as he would have already been married to a citizen of the United States entitling him to immediate lawful permanent resident status under the INA."

challenge removal, except on asylum grounds, if he or she overstays the grant of time permitted by the VWP. The quid pro quo that the alien gets is an entry without satisfying the need for a visa. If we were to permit such unjustified challenges as here are made by Bingham, it would destroy the efficacy of the VWP, which permits millions of aliens each year to enter quickly and without a visa.

   **DENIED**.