PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3157
_____

JORDANA VERA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of a Removal
Order of the Department of Homeland Security
File No. A201 246 042
_____

Submitted under Third Circuit LAR 34.1(a)
December 16, 2011

BEFORE: SLOVITER, VANASKIE, and GREENBERG,
Circuit Judges

(Filed: March 1, 2012)

———————————

Robert J. Adinolfi
110 Wall Street
11th Floor
New York, NY 10005

    Attorney for Petitioner

Eric H. Holder, Jr.
Attorney General
Tony West
Assistant Attorney General
Richard M. Evans
Assistant Director

Sharon M. Clay
Thomas W. Hussey
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

    Attorneys for Respondent

———————————

OPINION OF THE COURT

———————————

GREENBERG, Circuit Judge.

## I. INTRODUCTION

Petitioner Jordana Vera (also known as Jordana Vera-Sera) ("Vera"), a citizen of Argentina, seeks review of a removal order of the Department of Homeland Security ("the Department").[1]  The Department ordered Vera removed for staying beyond the 90 days that she was permitted to stay pursuant to the Visa Waiver Program ("VWP"), under which she entered this country.  Vera contends that the Department's removal order is invalid because the government failed to show that she waived her right to contest her removal under the VWP and she did not receive the due process procedural protections to which she contends she would have been entitled under the Fifth Amendment in the absence of such a waiver.  Vera also argues that, because she was a minor when she entered this country, she could not at that time either explicitly or implicitly waive any procedural rights that she had with respect to contesting a later

---

[1] Throughout this opinion we refer to the agency enforcing the applicable law and regulations as the Department of Homeland Security.  In point of fact, however, the Department was not established until after Vera entered this country.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 101, 116 Stat. 2135, 2142.  The Homeland Security Act integrated all or parts of 22 different federal departments and agencies, including as relevant to this case the Immigration and Naturalization Service and the Customs Service.  Thus our references to the Department are sometimes to its predecessor agency.

3

order of removal.  For the reasons that follow, we will deny her petition for review.


## II.  FACTUAL AND PROCEDURAL HISTORY

On September 8, 2000, when she was 12 years old, Vera, accompanied by her father,[2] entered the United States through the VWP.[3]  Recently, in Bradley v. Attorney General, 603 F.3d

---

[2] We are uncertain as to whether Vera's mother accompanied her.

[3] In her opening brief in this Court, Vera did not concede expressly that she entered the United States pursuant to the VWP.  But the government in its answering brief pointed out that Vera stated that she was admitted under the VWP in the Record of Sworn Statement that she executed when Immigration and Custom Enforcement officers took her into custody and that her father, in an affidavit submitted on her behalf, made the same representation.  Though she had the opportunity in her reply brief to contest the government's representation of the contents of those documents she did not do so nor does she deny now that she entered the United States under the auspices of the VWP.  Moreover, she does not contend that she entered the United States on any basis other than under the VWP.  In these circumstances, we are satisfied that she entered pursuant to the VWP.  We also point out that there is no indication in the briefs or the record on the petition before us that she ever has left this country since the time of her entry.

235, 238 (3d Cir. 2010), we described the pertinent components of the VWP:

> Under the VWP, a qualifying visitor may enter the United States without obtaining a visa, so long as a variety of statutory and regulatory requirements are met. Among other things, a visitor seeking admission under the VWP must execute certain immigration forms, present a passport from a qualifying country, and possess a round-trip ticket. 8 U.S.C. § 1187(a). Once admitted under the VWP, a visitor may remain in the United States for 90 days. 8 U.S.C. § 1187(a).

Visitors to the United States admitted pursuant to the VWP must waive certain procedural rights afforded other aliens within this country before they may be removed without their consent. Thus, as we indicated in Bradley, "[m]ost significantly, a VWP visitor must waive his or her rights to contest the government's admissibility determinations and removal actions, except that the alien may contest removal actions on the basis of asylum." 603 F.3d at 208 (citing 8 U.S.C. § 1187(a)-(b)). The Department has implemented this statutory requirement through regulations requiring that a VWP applicant, prior to admission to the United States, present United States officers with a completed, signed Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form," 8 C.F.R. § 217.2(b)(1) (2000), which

5

contains an express waiver of any possible right to contest admissibility determinations and removal actions.[4] A visitor's execution of the Form I-94W waiver is an "ironclad" requirement; "[i]ndeed, a VWP applicant may not be provided a waiver [of visa requirements] under the program unless the alien has signed a VWP waiver, [8 U.S.C. § 1187(b)], and an applicant who does not sign will be refused admission and removed, see 8 C.F.R. § 217.4(a)(1)." Bradley, 603 F.3d at 238 (internal quotation marks omitted).[5]

---

[4]We reference the regulations in effect at the time Vera entered the United States though we note that those regulations do not differ as significant here from the more current regulations to which Bradley evidently cited.

[5]In full, the VWP's waiver provision states:

> An alien may not be provided a waiver under the program unless the alien has waived any right-
>
> > (1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or
> >
> > (2) to contest, other than on the basis of an application for asylum, any action for removal against the alien.

8 U.S.C. § 1187(b) (2000).

So far as we are aware neither the statute authorizing the establishment of the VWP nor its implementing regulations make any exception to the requirement for the execution of the waiver in the case of a minor, and the parties in their briefs do not suggest that there is any such provision. In a procedure differing from that applicable in cases in which aliens were admitted on bases other than under the VWP, the determination of whether a VWP entrant will be removed is made "by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability." 8 C.F.R. § 217.4(b) (2000).[6]

It is undisputed that Vera remained in the United States for many years beyond the time that the VWP authorized her to stay, and that she still remains here. But Vera's long and apparently undisturbed unlawful stay in the United States was interrupted on July 22, 2011, when, during their execution of a warrant for the arrest of her brother, Immigration and Customs Enforcement ("ICE") officers discovered that Vera was in the United States. At that time the ICE officers took Vera into custody, and while in custody she completed a Record of Sworn Statement regarding her entry and status in the United States in which she confirmed that she entered the United States pursuant to the VWP. That same day, the Department issued a warrant for her arrest and removal, and ICE also issued to Vera a "Notice of Intent to Deport for Violating the Terms of Your

---

[6] There is an exception to this provision, not applicable in this case, for cases in which the alien is seeking asylum.

Admission Under Section 217 [of the Immigration and Nationality Act ("INA")]."[7]  That document stated:

> [ICE] has determined that you entered the United States pursuant to Section 217 of the Immigration and Nationality Act.  Accordingly, you executed a Form I-791, Visa Waiver Program Information Form that explained to you the conditions of admission under the Visa Waiver Program.  When you signed Form I-791, you also waived your right to contest deportability before an immigration judge and the Board of Immigration Appeals, and to any judicial review of any and all of the above decisions.
>
> [ICE] has determined that you have violated the terms of your admission under Section 217 . . . on the grounds that:
>
> You have remained in the United

---

[7]The Visa Waiver Program originally was entitled the "Visa Waiver Pilot Program" and was enacted as section 217 of the Immigration and Nationality Act.  See Pub. L. No. 99-603, 100 Stat. 3359, 3435-39 (1986).

States for a time longer than permitted.

App. at 4.[8]

In conformity with the provisions of the VWP, following the time that the ICE officers took Vera into custody there were no proceedings before an immigration judge to determine her removability. Rather, the Department promptly scheduled her for forthwith removal on August 4, 2011. On that date, however, she refused to board the aircraft and thus she did not depart.[9] Instead, Vera filed a timely petition for review with this

---

[8]The "Notice of Intent to Deport" refers to Vera's execution of a Form I-791, while the pertinent statutes and regulations in place as of Vera's entry required that a VWP visitor execute a form I-94W. Those regulations referencing Form I-791 label that form as a "Visa Waiver Pilot Program Information Form," while labeling the I-94W as a "Nonimmigrant Visa Waiver Arrival/Departure Form." 8 C.F.R. § 299.1 (2000). We do not find the variation in forms to be of great concern as the significant question remains the same: whether at the time of her entry into the United States Vera executed a waiver of her right to contest her removal.

[9] We are surprised that an alien ordered removed can frustrate the removal process simply by refusing to board the aircraft available to take her to the country of removal. We would have thought that measures would be in place to effectuate an order of removal by whatever means are necessary.

9

Court on August 8, 2011, requesting that we vacate the order of removal and direct the Department to release her or provide her with the ordinary removal process, including a hearing before a neutral arbiter.

## III.  STATEMENT OF JURISDICTION

Pursuant to 8 U.S.C. § 1252(a)(1), we have jurisdiction over "final orders of removal."  See Khouzam v. Attorney Gen., 549 F.3d 235, 247 (3d Cir. 2008).  The parties' briefs and the record before us do not make clear whether the Department issued a removal order directed to Vera following the issuance of the "Notice of Intent to Deport," an omission that causes us to pause before concluding that there has been a final order of removal in this case over which we can exercise jurisdiction on a petition for review.[10]  Nevertheless, in other cases we have treated documents to be final orders of removal under 8 U.S.C. § 1252(a)(1) that, as is true here, by their titles might seem to be something less than final provided that the documents were coupled with agency action so that the documents and the action together had the effect of "an order . . . concluding that the alien is [removable] or ordering [removal]."  See Khouzam, 549 F.3d at 247 (concluding that the Department's decision to terminate petitioner's deferral of removal, which decision made petitioner "eligible for, and apparently subject to, imminent removal" was an "'order of removal' under section 1252").  We are satisfied that the Department's near deportation of Vera demonstrates

[10]We think it likely that the Department did not issue any order after the Notice of Intent to Deport as the briefs do not refer to any such order.

that even if the Department did not issue a document styled as a final order of removal addressed to Vera, that the "Notice of Intent to Deport" was, in effect, a final order of removal. Thus, we have jurisdiction over Vera's petition for review. See Bradley, 603 F.2d at 237 n.1 (concluding that 8 U.S.C. § 1252(a)(1) provides jurisdiction to review final orders of removal in cases involving VWP entrants).

## IV.  ANALYSIS

The government has been unable to produce the signed waiver that it contends that Vera must have executed pursuant to the VWP when she entered the United States.  Vera contends that this inability creates a presumption that she did not execute such a waiver and she accordingly was entitled to due process, including a hearing before a neutral arbiter, prior to being removed.  The government responds that because Vera concedes that she entered the United States through the VWP, in light of the statutory and regulatory requirements that VWP entrants execute a waiver before being admitted, the government is entitled to the benefit of a rebuttable presumption that Vera executed a waiver.  We agree that under Bradley the government is entitled to a presumption that Vera executed the waiver, and we further believe that the presumption has not been rebutted here.

In Bradley, a case similar in some respects to this case, the petitioner, Bradley, conceded that he had been admitted pursuant to the VWP and had stayed beyond the 90-day limit allowed.  Nevertheless he contended that the government's failure to produce his signed I-94W form rendered his removal

11

invalid because the government was required to prove that he executed such a waiver by "clear, unequivocal, and convincing evidence" in accordance with Woodby v. INS, 385 U.S. 276, 285-86, 87 S.Ct. 483, 488 (1966). 603 F.3d at 237-39. We rejected Bradley's argument, as we concluded that even if the Woodby standard applied to waivers required by the VWP for admission into the United States,[11] the government met its burden because of Bradley's concession that he entered the United States through the VWP, his declaration that he signed "a form" that he handed to the Customs Officer upon entering the United States, and that he thereafter was admitted to the United States. Id. at 239. The government provided further evidence in support of its position by submitting the top, unsigned portion of a Form I-94W bearing Bradley's name, date of birth, and his date of admission.[12] Id. We found that this evidence became "nearly irrefutable in view of the regulations and procedures governing admission under the VWP," which preclude entry into the United States without execution of a waiver. Id. We held that "[b]ecause 'agency action . . . is entitled to a presumption of regularity,' McLeod v. INS, 802 F.2d 89, 95 n.8

---

[11]Notably, we expressed "doubt [as to] Bradley's assumption that the Department must prove his waiver by 'clear, unequivocal, and convincing evidence.'" Bradley, 603 F.3d at 239.

[12]"During the admission process, [t]he departure record at the bottom of the form is retained by the alien, while the immigration official admitting the alien keeps the top portion, including the signed waiver." Bradley, 603 F.3d at 239 (citation and internal quotation marks omitted).

12

(3d Cir. 1986), we presume that the Department admitted Bradley under the VWP only after collecting the top portion of his completed I-94W form, including his signed VWP waiver." Id.

Although the record in Bradley, unlike the record here, included the petitioner's declaration and the top, unsigned portion of the I-94W, we find the reasoning of the opinion in that case to be compelling here. Vera admitted or at least did not deny that she entered the United States pursuant to the VWP, and her father's sworn affidavit essentially conclusively establishes that she entered the United States on that authority. As noted, a VWP applicant must present a "completed, signed Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form," which contains the VWP waiver, prior to admission. 8 C.F.R. § 217.2(b)(1) (2000). An alien may not be admitted pursuant to the VWP "unless the alien has waived any right . . . to contest . . . any action for removal," 8 U.S.C. § 1187(b)(2)(2000), and an alien who does not sign the VWP waiver will be refused admission and removed from the United States, see 8 C.F.R. § 217.4(a)(1) (2000). Vera does not direct our attention to any evidence that could rebut the presumption that the Department followed its own regulations in admitting her under the VWP. We therefore presume that Vera, as a VWP entrant, executed the statutorily-required waiver prior to her entry.[13]

_____

[13] Although Vera was a minor when she entered the United States she was not of such tender years that she could not possibly have executed the waiver. We hasten to add, however,

13

We recognize that our holding in this case is contrary to that of the Court of Appeals for the Second Circuit in an opinion on which Vera understandably relies in a case involving facts somewhat similar to those here.[14] In Galluzzo v. Holder, 633 F.3d 111 (2d Cir. 2011), the court refused to find that a VWP entrant had executed a waiver because, as is true here, the government did not provide a signed I-94W or any explicit evidence that the alien had executed the waiver. Id. at 115. We recognize also that courts generally "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938) (emphasis added) (stating so in the context of waiver of Sixth Amendment right to counsel); see also Fuentes v. Shevin, 407 U.S. 67, 94 n.31, 92 S.Ct. 1983, 2001 n.31 (1972) ("In the civil area, the Court has said that we do not presume acquiescence in the loss of fundamental rights. Indeed, in the civil area no less than the criminal area, courts indulge every reasonable presumption against waiver.") (citations and internal quotation marks omitted) (emphasis added) (quoting Ohio Bell Tel. Co. v. Pub. Utils. Comm'n, 301 U.S. 292, 307, 57 S.Ct. 724, 731 (1937), and Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812 (1937)); Bayo v. Napolitano, 593 F.3d

_____

that we are not implying that even if she had been of such a tender age our result would have been different. Instead, we leave the question of how the VWP is applied when the alien to be removed was of tender years when she entered the country to another day when it is necessary to answer it. See infra note 18.

[14] Vera also relies on a not precedential opinion from another court of appeals but we do not give that opinion any weight.

14

495, 503 (7th Cir. 2010) (en banc) (concluding that the waiver standard in immigration cases is "perhaps not quite as strict as the one applicable to criminal cases [as articulated in Zerbst], [but it] must reflect the Supreme Court's recognition of the unique character of [removal proceedings]").

Despite the exacting standard against which a claimed waiver of constitutional rights must be judged, we find it unreasonable to conclude that, on the one hand, Vera was admitted pursuant to the VWP, as she concedes, but, on the other hand, she refused or otherwise failed to sign a waiver. The controlling statutes and regulations are clear: a VWP applicant may not be admitted without waiving her right to contest removal, 8 U.S.C. § 1187(b)(2) (2000); 8 C.F.R. § 217.2(b)(1) (2000), and an applicant who refuses to execute such a waiver is denied entry to the United States, see 8 C.F.R. § 217.4(a)(1) (2000). Vera has not provided us with any reason to believe that the Department, in violation of its own regulations, admitted her without requiring that she sign a waiver, and in the absence of such evidence we will not indulge the unsupported presumption that she and the Department both circumvented the "linchpin" legal requirement of the VWP. See Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005) ("[T]he linchpin of the [VWP] program is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.").

Indeed, we think that even though the government contends that it is entitled to only a rebuttable presumption that Vera signed the waiver, in view of the circumstance that this

15

case involves the VWP, we should be particularly circumspect before finding that the presumption has been rebutted.[15] In being circumspect we take into account the cases that we have cited establishing an exacting standard for waiver of constitutional rights, but we nevertheless follow this particularly cautious approach because the presumptively executed waiver was joined with an application for entry into the United States. This joinder is critical because Vera is an alien and thus her request to enter the United States was statutorily based as it was without any constitutionally protected or even favored basis. See Landon v. Plasencia, 459 U.S. 21, 32, 103 S.Ct. 321, 329 (1982). In this regard, we point out that Congress may prescribe such requirements as it seems fit for an alien to be admitted into this country. See Kleindienst v. Mandel, 408 U.S. 753, 770, 92 S.Ct. 2576, 2585 (1972) ("In summary, plenary congressional power to make policies and rules for exclusion of aliens has long been established."). Of course, if an alien applicant for admission will not sign a waiver, she simply will not be admitted.

There is a second and independent basis for our result. Even if Vera did not sign a waiver, or if she signed a waiver that was invalid because she was a minor when she signed it, she

---

[15] The government does not contend that the presumption was irrebutable so that regardless of the actual facts Vera will be deemed to have signed the waiver. See B&G Constr. Co. v. Director, Office of Workers' Compensation Programs, 662 F.3d 233, 254 (3d Cir. 2011) (statute creating "irrebutable presumption" sets forth a rule of "substantive law"). Thus, we do not consider that possibility.

suffered no prejudice. Vera's contention with respect to the effect of her age at the time of the waiver's execution, if she signed such a waiver, brings to bear an argument that Bradley advanced regarding the enforceability of VWP waivers. Bradley contended that a VWP waiver must be entered into knowingly and voluntarily to be enforceable and that he was too intoxicated at the time he purportedly signed the waiver to have executed that document knowingly and voluntarily. 603 F.3d at 240. We noted that "[i]n all respects, Bradley's claim amounts to a challenge of his removal order under the Due Process Clause of the Fifth Amendment, and consequently, he cannot prevail without 'an initial showing of substantial prejudice.'" Id. (quoting Khan v. Attorney Gen., 448 F.3d 226, 236 (3d Cir. 2006)). We thus determined that "even assuming without deciding that Bradley's VWP waiver must be 'knowing and voluntary,' Bradley cannot invalidate his removal order unless he can demonstrate he was 'substantially prejudiced' by his allegedly unknowing waiver."[16]

We held that Bradley could not demonstrate prejudice and in so concluding adopted the reasoning of the en banc Court of Appeals for the Seventh Circuit in Bayo, 593 F.3d 495. In Bayo, a case similar to both this case and Bradley, the petitioner asserted that he did not knowingly and voluntarily execute the VWP waiver because the waiver was in English, a language that

---

[16]In Bradley we recognized that the Courts of Appeals for the Fifth and Seventh Circuits have found that VWP waivers must be knowing and voluntary to be effective. 603 F.3d at 240 (citing Bayo, 593 F.3d 495; Nose v. Attorney Gen., 993 F.2d 75, 79 (5th Cir. 1993)).

17

he could not speak or read. In finding that the petitioner in <u>Bayo</u> could not demonstrate prejudice the court explained:

> Had he known what the waiver said, Bayo would have had two options, either of which would have led to summary removal. If he had signed the waiver anyway, knowing full well what it said, he would be in the same situation as he is now. If he had refused to sign, he would have been removed summarily at the border because he did not have a proper visa. Perhaps there is a slight chance that after removal, Bayo could have obtained a visa to come to the United States, and then he might have settled in Indiana, met [the American citizen he married following entrance through the VWP], and married her, allowing him to adjust his status based on marriage at that time. As Bayo admits in his brief though, '[i]t is difficult to compare what might have been with what is.' This is true, and it is the reason why we find the explanation of how Bayo might have been harmed too speculative to support a showing of prejudice.

18

593 F.3d at 506.

We concluded that Bradley, like Bayo, was unable to "show he has been prejudiced by an unknowing or involuntary waiver because any harm would be too speculative." Bradley, 603 F.3d at 240. Reiterating the reasoning of Bayo, we found that "[t]he consequence [Bradley] now faces — summary removal — is the same consequence he would have faced had he known of the waiver and refused to sign . . . [and] he has failed to demonstrate how his knowledge of the waiver realistically could have changed this outcome." Id. In rejecting Bradley's contention that prejudice should be measured at the time Bradley was denied process, not at the time of his entry to the United States, we explained:

> Bradley's VWP waiver was an express condition precedent to his 1996 entry to the United States, and he would not have been admitted without it. The prejudice of which he complains — summary removal without a hearing — is a direct consequence of the VWP's congressional design and implementing regulations, and not Bradley's alleged failure to comprehend the terms of his VWP visitor status. . . . To prevail on his due process claim, Bradley must demonstrate substantial prejudice resulting from the due process

19

violation he has alleged — his unknowing waiver of constitutional rights. Accordingly, Bradley must prove that, but for his ignorance of the VWP waiver, he could otherwise contest his removal on the basis of his petition for adjustment of status. This, he cannot do. Had Bradley known the contents of the waiver and refused to sign, he would be in the same position as he is now — subject to summary removal without a hearing — and he would not now be eligible to adjust his status on the basis of his marriage to [an American citizen.]

Id. at 241; see also Bingham v. Holder, 637 F.3d 1040 (9th Cir. 2011) (relying on Bradley and Bayo in holding that VWP entrant could not demonstrate prejudice on basis of an allegedly unknowing or involuntary waiver).

Our prejudice analysis in Bradley, though based on markedly different facts, guides us in our determination in this case. In a contention similar to that Bradley advanced, Vera contends that the government violated her Fifth Amendment right to due process by denying her a hearing because her waiver — if she executed one — was unenforceable by reason of her

20

status as a minor at the time she executed that document.[17] Accordingly, Vera must demonstrate that enforcement of the allegedly defective waiver caused her substantial prejudice. As was the case with respect to the petitioners in Bayo and Bradley, Vera cannot do this. If Vera had been of majority age at the time she entered the United States and otherwise knowingly and voluntarily had executed the waiver, she would be in precisely the position she is in now — facing summary removal. She would not have been entitled to the procedural protections normally afforded to an alien prior to removal, the denial of which Vera contends causes her substantial prejudice. See Pet'r's br. at 15 (claiming prejudice on the basis of inability to challenge the illegality of her arrest, to receive a bond hearing, and to adjust her status on the basis of marriage). If Vera had refused to sign the waiver when attempting to enter the United States, she would have been denied entry because she did not have a visa at that time and could not have entered pursuant to the VWP. Vera thus fails to show how enforcement of the allegedly defective waiver if she signed a waiver or the enforcement of the VWP removal procedure even if she did not sign a waiver has prejudiced her.[18]

---

[17]Whether Vera's objection is cast as a contention that a minor's VWP waiver is ineffective per se or that Vera's waiver otherwise was not knowingly or voluntarily executed, the legal predicate for the objection is the same and Bradley's prejudice analysis applies.

[18]We thus decide this case without determining whether Vera's VWP waiver could not have been a knowing and voluntary

Bradley likewise disposes of Vera's claim that under Khouzam, 549 F.3d 235, substantial prejudice is presumed because Vera received no process at all before the attempt to remove her. In Khouzam, we held that the "complete absence of any process" inherently and substantially prejudiced a non-VWP petitioner when the government terminated his deferral of removal under the Convention Against Torture. 549 F.3d at 239-40, 258. In Bradley, we distinguished Khouzam because the petitioner in Khouzam "did not waive his due process rights, and no statute conditioned his admission to the United States on an express waiver of these rights." 603 F.3d at 241. Finding "no inherent prejudice in the enforcement of an express due process waiver against an alien who has already received the benefit of that waiver," we held that "in the VWP context, we will require the same showing of 'substantial prejudice' required for other due process challenges to orders of removal." Id. (citing Khan, 448 F.3d at 236). As in Bradley, Vera's due

waiver because of her age at the time of her entry into the United States. We observe, however, that the consequence of a decision that a minor cannot execute a valid waiver or the summary removal provisions of the VWP cannot be enforced against a minor could force the government to adopt a policy not to allow minors to enter this country pursuant to the VWP. After all, it seems obvious that the borders of this country should not be opened to minor aliens literally to walk in on the basis that they are temporary visitors but who then can refuse to leave and demand procedures to determine if they can be removed. In this regard, we point out that our experience shows that removal proceedings frequently become both complicated and protracted.

22

process claim thus fails because she cannot show that she suffered any prejudice, even if she did not sign the mandated waiver.

## V.  CONCLUSION

In reaching our conclusion we mention four significant final points.  First, the principles of the common law make it plain that persons should not gain an advantage by their wrongful conduct and that is precisely what Vera is trying to do as she unlawfully has overstayed her 90-day authorization to be in this country and seeks to build on that unlawful conduct to remain longer.  Second, inasmuch as there is no doubt that Vera has been in this country illegally since 90 days after her admission, this case is not one in which an alien who was admitted legally nevertheless by reason of her later conduct may be subject to removal.  Quite to the contrary, Vera's conduct after her admission is immaterial in these proceedings.[19]  Third, the VWP is a vast program pursuant to which, according to the government, in 2007 alone almost 16 million aliens were admitted to the United States.  Thus, the need for summary removal procedures to enforce the conditions of admittance under the VWP is obvious.  If individual hearings before already overworked immigration judges were required before an alien

---

[19] Thus, this case differs from Judulang v. Holder, 132 S.Ct. 476, 490 (2011), where the Supreme Court was concerned about arbitrariness in removal proceedings against "lawful resident aliens."  Vera is not a lawful resident alien.

23

admitted pursuant to the VWP could be removed summarily the program might become unmanageable. Fourth, though some people might regard the outcome of this case to be harsh the fact remains that if people in other countries object to the conditions of their admission into the United States they are free not to come here. In short, aliens either must accept the conditions of their admission or not enter this country. The petition for review which seeks to vacate the Notice of Intent to Deport is denied.