**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3692
_____

IBRAHIMA LY,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-221-860)
Immigration Judge:  Honorable Dorothy Harbeck
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 18, 2012

Before:  SLOVITER, SMITH AND COWEN, Circuit Judges

(Opinion filed: June 20, 2012)
_____

OPINION
_____

PER CURIAM

The pro se petitioner, Ibrahima Ly, asks us to reverse an order of the Board of

Immigration Appeals (BIA) that rejected his application for asylum and derivative relief.

For the following reasons, we will deny his petition for review of the agency's decision.

1

Ly is a native and citizen of the Republic of Guinea who arrived in the United States in 2008; having overstayed his business visa, he was placed into removal proceedings. Ly applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT), arguing that he had been mistreated in Guinea on account of his political activity, and specifically for his membership in the Union for Progress and Renewal (UPR) political party. According to his asylum application, Ly had become convinced that "the military dominated government of President Conte was a disaster for Guinea." Believing that the UPR was a force for positive change, Ly started helping the party "near the end of 2003 by importing T shirts with photos of the party leader and party logo on them." Administrative Record (A.R.) 252. Tragedy struck when his father, who was also a UPR member, was shot and killed by a government soldier while striking in 2007. Id. Later, Ly participated in an anti-government meeting that was raided by the military; he was eventually apprehended and was imprisoned for around four months, during which period he was interrogated, beaten, and otherwise abused. A.R. 253. After obtaining "unofficial" release from custody by having his family bribe prison officials, Ly "made plans to save money and to get a visa from the U.S. Embassy to come to the United States," successfully doing so in 2008. Id. Ly acknowledged that a recent coup in Guinea had affected the power structure that he feared, but insisted that "the current military leaders are just as bad or worse than President Conte," reaffirming that his life would "be in danger" if he returned to Guinea. Id. In support of his application, Ly submitted, among other materials, a letter from his wife (A.R. 201) and a certification of his involvement with the UPR (A.R. 198).

2

Following the close of testimony, relief was denied by an Immigration Judge (IJ), who found Ly to be lacking in credibility and his evidentiary proffer to be without sufficient corroboration. Of particular significance to the IJ's credibility decision was the fact that neither Ly's asylum application nor his wife's letter related that soldiers were still actively looking for him, whereas Ly had testified at his merits hearing that he was still under active scrutiny for his anti-government activities and that his wife had been harassed by the military. See A.R. 94–95; see also A.R. 140, 152 (testimony). On appeal, the BIA upheld the adverse credibility and corroboration determinations, and although it narrowed slightly the basis of the former, it echoed the IJ's concern that Ly's written submissions "did not indicate that the military had continued to search for him" after his departure. A.R. 3. The BIA also noted that Ly had waived his CAT claims by failing to argue them on appeal. A.R. 5.

Now proceeding without counsel, Ly timely petitions for review of the BIA's decision. The Government urges us to uphold the agency's determination.

Pursuant to 8 U.S.C. § 1252(a)(1), we have jurisdiction over final agency orders of removal. Vera v. Att'y Gen., 672 F.3d 187, 192 (3d Cir. 2012); see also Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 340–46 (3d Cir. 2008) (discussing substantive asylum standard). When, as here, "the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The factual determinations of both opinions are evaluated under the same "substantial evidence" standard, a deferential mode of review in which the agency's findings of fact are

3

conclusive unless a reasonable adjudicator would be compelled to conclude to the contrary. Yusupov v. Att'y Gen., 650 F.3d 968, 977 (3d Cir. 2011) (citing cases); see also Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003) ("Adverse credibility determinations are factual findings subject to substantial evidence review."). "Where the record supports plausible but conflicting inferences in an immigration case, the . . . choice between those inferences is, a fortiori, supported by substantial evidence." De Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007).

Salient to our decision is the operation of the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, 302 (2005), which applies because Ly first filed his asylum application after the Act's effective date of May 11, 2005. See Dong v. Att'y Gen., 638 F.3d 223, 229 n.3 (3d Cir. 2011). The Act affected the processes of determining credibility and requesting corroboration. See Guta-Tolossa v. Holder, 674 F.3d 57, 62 (1st Cir. 2012) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)). In assessing credibility, the agency must evaluate (among other factors) the alien's "demeanor, candor, or responsiveness," the "inherent plausibility" of his account, the "consistency between [his] written and oral statements" (accounting for "the circumstances under which the statements were made"), and the internal consistency of his statements and their relationship to other evidence in the record, "*without regard* to whether an inconsistency, inaccuracy, or falsehood goes to the heart of [his] claim." 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). The presence of a single identified ground can suffice to support an adverse credibility determination. Rizk v. Holder, 629 F.3d 1083, 1087 (9th Cir. 2011) (quoting Wang v. INS, 352 F.3d 1250, 1259 (9th Cir. 2003)).

4

Having conducted a thorough review of the administrative record, we agree with the Government that the omission from Ly's written submissions of the Guinean military's continued interest in pursuing him, as well as his failure to address the military's active harassment of his wife, constitutes "substantial evidence" in support of the adverse credibility determination. This gap went to the heart of his claim; ongoing military scrutiny would be extraordinarily relevant to the discussion and analysis of the likelihood of future persecution, as it would serve to reinforce his otherwise-generalized fear of remaining in Guinea (and his associated "certain[ty] that [his] life w[ould] be in danger if [he] return[ed] to Guinea", A.R. 253).[1] His wife, meanwhile, couched her fear of remaining in the familial home in a conditional tense. She did not relate that she had been actually harassed by soldiers, or that the military was looking for Ly, but rather that she was concerned about the possibility of becoming "a victim of sexual or physical harassment" if she remained in the familial home. A.R. 201.

As the Government observes, such an omission need not doom Ly's credibility or his asylum application as a whole, and it was not emphasized as a potential and problematic discontinuity during his main merits hearing. See Kin v. Holder, 595 F.3d 1050, 1056–57 (9th Cir. 2010) (observing that "[o]missions [from asylum applications] are not given much significance because applicants usually do not speak English and are not represented by counsel"; in addition, aliens should be "afforded the opportunity to

---

[1] The Administrative Record reveals that the other persons who submitted affidavits on Ly's behalf also discussed his fear of returning to Guinea in speculative terms. See, e.g., A.R. 198 (affirming that Ly "will face further persecution from the New Military Junta . . . because of his opposition to a military government").

5

explain inconsistencies within their own personal testimony because the true story may get lost in translation"); but see id. at 1057 ("When inconsistencies exist between the testimony of multiple witnesses and documentary evidence, however, it is not a matter of a communication problem requiring clarification, but of determining how the evidence fits together."). Yet while Ly has attacked several of the other findings used to support the adverse credibility determination, he has not satisfactorily addressed this particular inconsistency in either his agency appellate documents or in his brief before this Court. See, e.g., A.R. 64–65 (discussing "escape" ambiguity, wife's concern for her safety, and general fear of returning to Guinea); A.R. 13 (counsel: "While I cannot say for certain, *I would imagine that* his wife was afraid of the soldiers who were coming to her home, since prior to the departure of her husband she did not express any fear of remaining in her home.") (emphasis added). See generally Pet'r's Br. Accordingly, this omission was sufficient to support an adverse credibility determination, which (in turn) did justify the denial of asylum and derivative relief.[2]

Thus, for the foregoing reasons, Ly's petition for review will be denied.

---

[2] Because we so hold, we need not address the "intuitively related, [but] distinct" concept of corroboration. Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006). While the IJ's corroboration and credibility inquiries were somewhat intertwined, she did not find that Ly was incredible *because* of his failure to corroborate, but rather because the material he used to corroborate his application further exacerbated an important omission.