**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2352
_____

ENAYOT CHOUDHURY,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A208-934-122)
Immigration Judge:  Honorable Lawrence O. Burman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 20, 2017

Before:  GREENAWAY, Jr., GREENBERG, and ROTH, Circuit Judges

(Opinion filed: September 18, 2018)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Enayot Choudhury petitions for review of an order of the Board of Immigration Appeals ("BIA"), which dismissed his appeal from an Immigration Judge's ("IJ") order denying him asylum and related relief. We will deny the petition for review.

Choudhury is a citizen of the United Kingdom. He entered the United States in March 2016 under the Visa Waiver Program ("VWP"). Under the VWP, aliens from certain designated countries (including the U.K.) may enter the U.S. with permission to remain for up to 90 days without obtaining a visa. See 8 U.S.C. § 1187(a); Bradley v. Att'y Gen., 603 F.3d 235, 238 (3d Cir. 2010). As a quid pro quo, such visitors are subject to summary removal after the conclusion of that period and must waive their right to challenge the Government's removal actions. See Bradley, 603 F.3d at 238 (citing 8 U.S.C. § 1187(b)). VWP visitors may, however, apply for asylum. See id. (citing 8 U.S.C. § 1187(b)(2)). If they do so, the Government refers the matter to an IJ for an "asylum-only" proceeding (i.e., one in which the IJ merely grants or denies asylum and related relief and does not address the visitor's removability). See id.

In October 2016, Choudhury was arrested for overstaying his visa and he was placed in asylum-only proceedings. A.R. 241. Appearing pro se, he testified that his claim was based on fear of persecution by his family.

Choudhury testified that he is ethnically Bangladeshi, and his family is Muslim. Choudhury met a black, Christian woman from Philadelphia, Talia Gladden, on the internet in July 2014. After a prolonged on-line relationship, Choudhury travelled to the U.S. to meet her and they fell in love. When Choudhury returned to the U.K., he

2

informed his family that he wanted to marry Gladden.  They cursed at him and told him that marrying a non-Muslim was against the teachings of Islam.[1]  His brother and a brother-in-law punched and kicked him, and his family gave him an ultimatum—either choose his family or choose Gladden.  The next day, Choudhury made his decision that he wanted to be with Gladden.  When he told his brother his decision, his brother beat him on his back.

After he told his family about Gladden, they took away his phone and passport, and forced him to work long hours in the family restaurant at very low pay in order to control him.  In March 2016, Choudhury was able to escape to Philadelphia after convincing his brother to drop him off for a non-existent "job interview."

Choudhury also testified at his March 2017 merits hearing that he had been baptized in Gladden's church (Taylor Tabernacle in Philadelphia) in May of 2016, and that he was going to marry Gladden the day following his immigration hearing.  The IJ noted that he did not have authority to adjust Choudhury's status, and the IJ decided to go ahead and hear the asylum case, advising Choudhury that he "could work on the marriage" while he was appealing, if asylum was denied.  A.R. 95.[2]

---

[1] Choudhury testified that even if that was not strictly true, his family and many other people in the U.K. believed that Muslims could not marry non-Muslims.  A.R. 121.

[2] Choudhury explained that he hadn't married Gladden right away when he came to the U.S. because they did not have the money for the I-130 adjustment of status application ($420).  A.R. 95.  VWP visitors may apply to adjust their status to lawful permanent resident if they otherwise qualify, but only if they do so within their 90-day VWP period. See Bradley, 603 F.3d at 242.  Choudhury's marriage was not within the 90-day period.

The IJ found that Choudhury was credible, although the only collaboration he provided was some background materials (he did not provide any documents from the church, for example). The IJ noted that Choudhury "would have a fairly good case for religious persecution if he lived in Bangladesh or Pakistan or some other Muslim country," but concluded that Choudhury had not shown that authorities in the U.K. "would not protect him from this threat of death" and that he had failed to show that he could not safely relocate within the U.K. A.R. 57.

The Board of Immigration Appeals ("BIA") dismissed his appeal. The BIA found "no clear error in the [IJ's] findings of fact and adopt[ed] and affirm[ed] the decision to deny [Choudhury's] applications for asylum and withholding of removal." A.R. 2. The BIA stated that the IJ's decision did not address relief under the Convention Against Torture ("CAT"), but declined to remand the matter because Choudhury had "not made a prima facie claim of torture in the [U.K.] by or with the acquiescence (including willful blindness) of a public official or other person acting in an official capacity." A.R. 2 n.1[3] The BIA also stated that Choudhury had failed to "raise[] a CAT claim on appeal." Id. The BIA stated that Choudhury's "mistreatment by his family fell short of persecution," and that he had "not shown that the police would be unable or unwilling to protect him." A.R. 2-3. The BIA refused to consider additional evidence that Choudhury submitted

---

[3] The IJ's decision actually does mention CAT relief, concluding that Choudhury "is not eligible for any of his relief because of relocation and the possibility of police protection. All three of his applications, asylum, withholding of removal, and Convention Against Torture protection must fail."

4

with his appeal,[4] and declined to remand for consideration of the evidence, as some of it was not unavailable at the time of the hearing before the IJ, and the BIA was "not satisfied that the proffered evidence would likely change the result below."[5]

Still proceeding pro se, Choudhury filed a petition for review. We have jurisdiction to review "a final order of removal" pursuant to 8 U.S.C. § 1252(a)(1). This jurisdictional grant encompasses a final removal order under the VWP. See Bradley, 603 F.3d at 236, 237 n.1. Although VWP visitors are statutorily barred from contesting removal by 8 U.S.C. § 1187(b)(2), we have held that § 1187(b)(2) is a statutory limitation rather than a jurisdiction-stripping provision. See id. The only question before us is whether the agency properly denied Choudhury's request for asylum and related relief.

To be eligible for asylum, the applicant must "establish a well-founded fear of future persecution in his home country 'on account of race, religion, nationality, membership in a particular social group, or political opinion,' 8 U.S.C. § 1101(a)(42)(A); see id. § 1158(b), by demonstrating a subjective fear that is objectively reasonable." Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 214 (3d Cir. 2017). We review the agency's factual findings, including "statements about the events and circumstances in

---

[4] Choudhury submitted three letters from Gladden explaining the nature of their relationship, a letter from his mother-in-law, a letter from his brother-in-law, a copy of Choudhury's and Gladden's marriage certificate, and a certificate of Choudhury's membership in Taylor Tabernacle congregation.

[5] Choudhury's brief here does not mention the BIA's decision not to remand his case to the IJ. We thus will not discuss that aspect of the decision further. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004) (claim not addressed in opening brief is waived).

the country grounding an alien's claim that he or she suffered persecution," for substantial evidence. See Mendoza-Ordonez v. Att'y Gen., 869 F.3d 164, 169 (3d Cir. 2017). Under this deferential standard of review, we must uphold those findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001); 8 U.S.C. § 1252(b)(4)(B). But "whether the events and circumstances alleged rise to the level of persecution is a legal determination" over which we exercise plenary review. Mendoza-Ordonez, 869 F.3d at 169 n.13.

Choudhury argues here that the BIA erred in its factual findings regarding how the police would respond to any complaints of persecution, and erred in its legal conclusion that what he suffered in the past does not meet the criteria of persecution. The Government refutes those arguments, and adds that Choudhury failed to show that he could not safely relocate within the U.K. to avoid persecution.

To be eligible for asylum, the applicant must show, among other things, that "[t]he source of the persecution [is] the government or forces that the government is unwilling or unable to control." Khan v. Att'y Gen., 691 F.3d 488, 496 (3d Cir. 2012). Choudhury claims that the police are unable to help him with threats from his family. He testified that he did not go to the police immediately, because he had read articles that said that the police hadn't done anything to help in such situations, and when he did finally go, he did not file a formal report because he was not sure how long an investigation would take. A.R. 120. This testimony suggests that the police were ready to help, but that Choudhury

6

failed to follow through by filing a complaint. We will thus uphold the BIA's determination that Choudhury failed to meet his burden to show that the police would not protect him, as the evidence in the record does not compel a contrary conclusion. And because Choudhury did not show that any persecution in the future would be by a group that the government is unable or unwilling to control, we need not consider the question of whether Choudhury's past experiences constituted "persecution."[6]

Further, we agree with the Government that Choudhury did not meet his burden of showing that he could not safely relocate within the U.K. See 8 C.F.R. § 1208.13(b)(2)(ii); (3)(i). As the IJ noted, Choudhury could relocate to London, "one of the largest cities on Earth [with] millions of people," or he could move "to some more isolated area of the country" where he would not be found by his brothers. Because Choudhury did not demonstrate that the police would be unable to control his family and that he could not relocate to another part of the U.K., his asylum claim fails.

Since his asylum claim failed, the agency correctly concluded that his withholding of removal claim necessarily failed, too. See Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004). As for his claim for protection under the CAT, we agree with the BIA that

---

[6] We note, however, that "the concept of persecution does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." See Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir.1993). And "[w]hile this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005); see also Toure v. Att'y Gen., 443 F.3d 310, 318 (3d Cir. 2006).

7

Choudhury had "not made a prima facie claim of torture in the [U.K.] by or with the acquiescence (including willful blindness) of a public official or other person acting in an official capacity." A.R. 2 n.1. As noted previously, Choudhury indicated that the police were willing to assist him in his claims against his family. See 8 C.F.R. § 1208.18(a)(7); Dutton-Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (explaining burden for establishing CAT claim).

For the foregoing reasons, we will deny the petition for review.